PROVOSTY, J.
An adjudication was made, at judicial sale in the succession of Odelie Zebriska, of squares 117 and 124 and of 24 lots of square 116, in the town of Harlem, parish of Jefferson, at the upper boundary of the city of New Orleans; and, the adjudicatee having refused to accept title, the present proceeding was brought to compel him to do so. His ground of refusal is that, so far as appears from the public records, the property belongs to the city of New Orleans; there being of record an act of sale of it to the city by Wm. Zebriska, the former owner of record, of date March 25,1862, and nothing to show that the title thus conveyed has ever been divested. The city filed an intervention, claiming title by virtue of said sale. Against the city the succession of Odelie Zebriska pleads the prescriptions of 1 and 30 years.
For supporting the 30 years’ prescription counsel for plaintiff in rule was proceeding to offer proof of the 30 years’, possession as owner when counsel for the city interrupted him, saying that there was no dispute as to the facts; that the city admitted that Ode-lie Zebriska had had uninterrupted physical possession of the property since 1866; that there was only a question of law in the ease.
Counsel did not say what that question of law was, but a question of law had been stated in the petition of intervention to the following effect, namely: That Odelie Zebriska, by reason of her warranty as heir of her father, Wm. Zebriska, the city’s vendor, was estopped from pretending to possession as against the city, and that therefore her possession, no matter how much it may have been as a matter of fact for herself, had to be held to have been as a matter of law for the city, and hence that the city, and not she, had been in possession of the property during her occupancy of it. *1079 That contention derives some color from the declaration of article 2476, Civ. Code, that “the object of warranty is the buyer’s peaceable possession” of the thing sold. The obligation of maintaining the vendee in peaceable possession would seem to be inconsistent with any attempt on the part of the vendor to dispossess the vendee and keep him out of possession during the prescriptive period. But this article 2476 must be read in conjunction with article 2502:
“That warranty should have existence it is necessary that the right of the person evicting should have existed before the sale.”
In other words, so long as no one gainsays the perfect validity of the title conveyed, there can be no question of warranty. From this the conclusion is unavoidable that where the vendor, without disputing the perfect validity of the title which he has conveyed, and without in any way pretending to title, seeks to reacquire by prescription the property he has sold, and to that end takes possession of it, as any other trespasser might do, there • can be no question of warranty. Doubtless such a proceeding would be morally wrong, just as it is morally wrong for the trespasser to oust the true owner by violence and hold possession by force; but the prescription of 10 years for movables and 30 years for immovables dispenses with good faith — extends the shield of its protection as readily over the trespasser and the thief as over the honest possessor. And, besides, the moral wrong is not greater for the vendor, while keeping the price, to seek to reacquire the property by prescription, than it is for the purchaser, while keeping the property, to use the same means for avoiding payment of the notes he has given for the price.
In the case of Roe v. Bundy’s Heirs, 45 La. Ann. 398, 12 South. 759, this court said that the vendor is not precluded from reacquiring by prescription the property he has sold.
Realizing, doubtless, the weakness of this-ground of warranty, the learned counsel for the city have said not a word about it in. their brief, but have argued as follows: That. Wm. Zebriska never delivered possession to the city, but continued in possession until his death, when the possession passed by inheritance to his daughter, Odelie Zebriska,. who continued it unchanged to the present day, and that a vendor who continues in possession of the property he has sold must be held as a matter of law to do so in the-name of and for the account of his vendee;, that is to say, to hold by a precarious possession, such as cannot serve for prescription.
In this contention there are involved two-propositions of fact, namely: That Wm. Zebriska continued in possession after his sale-to the city; and, second, that Odelie Zebriska derived possession from her father.
It goes without saying that both of these propositions are contested. And the first thing that strikes us, in passing to the consideration of them, is that it would seem to be-rather late for the city to be raising, in the brief, issues of fact in connection with Odelie-Zebriska’s possession, when on the trial her counsel stopped counsel' for plaintiff in rule-from offering evidence on that point, saying that there was no dispute as to facts, but; only a question of law in the case.
Passing, however, over this inconsistency and apparent change of front, let us proceed to examine, in the light of the evidence in. the record, this issue of whether or not Zebriska delivered possession to the city. At_ the very first step of .the inquiry, in the act-itself which evidences the transaction between Zebriska and the city, we encounter this declaration:
“Accepting and purchasing for the city of New Orleans, and acknowledging due delivery and possession thereof.”
This notarial acknowledgment of the delivery of possession the city undertakes now *1081 to controvert after 45 years, after parties and witnesses are dead and the memory of a man runneth not. True, the door is not shut upon her for doing so, but she need adduce strong evidence; and all the more so, we may add, because, considering that, in the policy of the law, 30 years suffices for title, an admittedly quiet and uninterrupted physical possession of half again as long should not lightly be disturbed or robbed of- its legal fruits.
We have said that the city need adduce strong and satisfactory evidence, and we find that she has produced absolutely none, but that, as already stated, she occupied on the trial the attitude of admitting the facts to be as contended for by plaintiff in rule, and of relying upon some question of law — presumably the one as to warranty, which has already been discussed and disposed of— which had been raised in her petition. We find that for supporting her contention she is relying, in the absence of all evidence of her own offering, upon two letters that were offered in evidence by plaintiff in rule in another connection, and were so offered after the announcement had been made that the city raised no issue upon the facts. The letters may be said to be accidentally in the record, and we cannot help saying that for the city to be now pitching her case upon anything contained in these letters has very much the appearance of an afterthought.
They were written by Wm. Zebriska in June and July, 1866, and were addressed to the local federal authorities. In them Zebriska goes on to say that he was owner of, and for 20 years had been paying taxes on and been in possession of, squares 116, 117, 121, 122, 123, and 124 of the town of Harlem, when some 4 years back the federal army took possession of his said estate and destroyed his recently built fence on square 117, and his house built two years before on ■square 123, and that he had been deprived of the use of his said estate ever since; that the government had constructed other buildings on the property, and that these were being advertised for sale, but should be given him in indemnification for his improvements that had been destroyed.
Here we find Zebriska saying that the federal army had taken possession of the three squares in controversy and of squares 122 and 123 some four years before the date of the letters, and that there were at that time a house on square 123, and a recently built fence on square 117, and that at the time of said taking he was the owner of the property and had then been in possession of it for 20 years.
The federal army could have taken possession of the property only after entering the city, which we know historically (New Orleans v. Steamship Co., 20 Wall. [U. S.] 387, 22 L. Ed. 354) was in May, 1862, a month or so after the sale to the city. Said statement of Zebriska amounts, therefore, to an assertion that he was in possession of the property after the sale to the city, and had been in possession for 20 years, from which the necessary inference would be that he had continued in possession after his sale to the city; and it is on this the city relies for supporting her present contention that Zebriska continued in possession of the property after his sale of it.
Zebriska’s statement must be taken as made, and as made it is not only that he was in possession but also that he was owner— that is to say, not only that he never delivered possession to the city — but that he never sold to the city. Here we find Wm. Zebriska, f. m. c., deliberately speaking falsely in regard to his continued ownership. Are we to believe him when in the same breath he speaks of his continued possession? And his assertion of ownership of square 123 was as false as that of his ownership of the property in controversy; for square 123 belonged *1083 to Odelie Zebriska, who had bought it in 1848, at about the same time that he had bought squares 116, 117, 122, and 124.
Allow the city, however; the full benefit of the statement, and what have we? Zebriska says he was in possession, but he does not describe the character of- his possession; and the word “possession,” unaccompanied by a qualifier to indicate the kind of possession, is a word of very vague meaning. It may mean occupancy; or it may mean á possession which, though not amounting to actual occupancy, yet is manifested by outward signs, such as a fence or a ditch; or it may mean simply the Active possession which follows title. Now, which one of these kinds- of possession did Zebriska mean to say he had? The sum total of what we know of the character of the property, in regard to its having been improved or unimproved, inclosed or uninclosed, or, in other words, in regard to what kind of possession Zebriska had of it, is what is stated above as contained in these letters. Take away these letters, and we are left utterly in the dark. And even after reading the letters we do not know from the record but that to this day the land is anything more than a part of the low, undrained plain covered with latanier and scrub growth we traverse in entering the city from that quarter. The low price of the sale to the city — $1,975 for the three squares, barely the price of an ordinary city lot, and that, too, most probably, paid in the depreciated Confederate States money which was the currency of the times — would indicate that the land was unimproved and situated some distance from the built-up part of the city. Zebriska’s laying stress upon his having been paying the taxes upon the property would give rise to suspicion that his possession had not been so manifest but that he felt the need of referring to this additional sign of it. From the letters we know that there was a recently built fence around square 117; and this is absolutely all we do know from, the record of any improvements on the property. Square 123, be it remembered, on¡ which there was a house, forms no part of .the property in controversy, but has always, belonged to Odelie Zebriska. In all likelihood there were no other improvements on. the land than those mentioned by Zebriska,. for the probability is that, had there been,, they would have been destroyed, like the fence-on 117 and the house on 123, and that Zebriska,. in making his claim for indemnity, would not have failed to include them in his schedule of losses. We might surmise that there were-others; but this ease cannot be decided on surmise, but must be decided on the evidence. The evidence shows no other improvement on the property than this recently built fence-around square 117. We have, therefore, to-deal with the case on the hypothesis of Zebriska’s having had no other kind of possession than as manifested by this fence.
Acting on that hypothesis, which, we repeat, is the only one supported by the facts of the record, we find that Zebriska had no other kind of possession than such as necessarily passed to the city with title to the-property — such possession as follows title. Possession by title and by means of a fence is-not deliverable otherwise than by the execution of the act of sale. By the sale, the fence-becomes the property of the vendee, and the-land thenceforward is inclosed by a fence belonging to the vendee. Zebriska’s statement that he had continued to be owner and in-possession does not necessarily mean anything more than that he had had and continued to have such possession as follows-title and as is outwardly manifested by a. fence on a part of the land.
W'e will add that the extreme probability-is that the city put this property to the use-for which she bought it; that is to say, took actual possession. The date of the sale was March 25, 1862. At that date Farragut was- *1085 coming up the river. The city was passing through the greatest crisis of her history. The wildest excitement prevailed. Every nerve was being strained to put the city in a state of defense. To a moral certainty the city did not at such a time acquire the property for speculation, or by way of investment, or for any indefinite future use, but for some immediate, pressing need, connected, in all probability, with her measures of defense; and, we may say the extreme probability is that she did put it to that use. At such a time, had Wm. Zebriska, f. m. c., ventured to resist the city’s putting the property to the use for which it had been bought, he would have been met, not by a sheriff’s writ, but by a squad of soldiers.
But, for argument’s sake, let us assume that the acknowledgment of delivery of possession made in the act of sale is untrue, and let us surmise that the property was highly improved, that all the squares had houses on them, which Wm. Zebriska was occupying either himself or through his tenants, and that Zebriska continued in possession of the house he was occupying and the tenants continued to attorn to him — what then? Does the record show that this possession continued until the death of Zebriska and then passed to Odelie Zebriska?
The record shows the very opposite. The said letters show that within a month or so after the sale to the city the property was taken possession of by the federal army, and every building and fence on it was destroyed, and that at the date of the letters, some four years afterwards, Zebriska was still out of possession and was asking that the buildings which the government had erected on the property be given to him by way of indemnity. And the official indorsements on the letters show, by the way, that that request was refused. There is not in the record a scintilla of evidence to show that after the evacuation of the property by the federal army Zebriska ever attempted to take possession of it. We know that at the date of the evacuation he must have been a very old man, and we know that he died about that time, and we know that his request to be-given the buildings that had been erected on the property was refused.
True, we do not know the origin of Odelie-Zebriska’s possession. But everyone is presumed to possess for himself until the contrary is shown; and therefore Odelie Zebriska’s possession must be held to have been in her own name and for her own account as-owner until the contrary is established. So-important in the law of possession is this presumption of possession being for self that an article has been devoted specially to it in the Code, Article 3488. Moreover, by stopping counsel for plaintiff in rule from offering-evidence on the question of Odelie Zebriska’s possession, the city would seem to have renounced the right to raise issues concerning: the origin of that possession.
The record fails entirely to afford any, the least, information touching the origin of Odelie Zebriska’s possession. Counsel expressly declared that they refrained from, making any admission touching the possession of the property from March 25, 1862,. which was the date of the sale to the city, to January 1, 1867, the date when it is admitted that Odelie Zebriska was already in the physical possession of the property. From the facts in the record, the origin of Odelie Zebriska’s possession can only be matter of conjecture. Our own conjecture would be that at the auction sale of the buildings-made by the federal authorities she became the purchaser, and simply took possession of the buildings where they stood, and of the land with them; the city having practically abandoned it.
In connection with this taking possession of the property by the federal army, a question arises whether the said letters, by which *1087 «lone the said military occupation is shown, are evidence in favor of plaintiff in rule, and, if so, how far credit may be attached to them. Primarily these letters were not evidence. They were nothing more than the unsworn statements of a deceased person. When offered in evidence, they would have had to be ruled out, if objection had been made by the city. But the city made no .objection, and thereby impliedly accepted •.them as evidence for whatever they might be worth; and we find that she herself is invoking them as evidence, and nowhere in the brief filed in her behalf is a word said .against their being accepted as evidence. Hence we conclude to accept them as evidence in favor of plaintiff in rule. As to the •credit that may be attached to them, ordinarily a witness who is found to have spoken falsely in one particular is not believed in another, and Wm. Zebriska is found to have spoken falsely touching his continued ownership of this property and touching his ownership of Odelie Zebriska’s square 123; and the circumstances leave no room even for •charity to doubt that his prevarication was intentional and deliberate. But in this matter of the occupation of this property by the federal army he could not but have known that the person he was addressing was fully as well informed as he in regard to the place where the federal army had been encamped, and he would hardly have attempted any misrepresentation on that point, and, moreover, the buildings which were being advertised for sale were still on the land as irrecusable evidence of the occupation. We know, besides, historically, that during the occupation of New Orleans by the federal forces an army was encamped in that neighborhood.
We conclude, therefore, that even if Zebriska continued in possession of the property after the sale he soon lost that possession, and that absolutely nothing in the record shows that he ever resumed it.
Absolutely nothing shows that Odelie Ze.briska’s possession was a continuation of that which her father had had before the sale. We are at first blush inclined to consider that it was, because, when a descendant is found in possession of property of which the ascendant had possession, we naturally conclude that the one possession is a continuation of the other. Such a thing would seem to be in the order of nature; and the more remote in the past the commencement of the second possession is placed, the stronger is our inclination to connect the two possessions. If we find that a homestead has apparently belonged to the present owner and his ancestors for centuries, we are very strongly inclined to believe that it has descended from father to son by inheritance. This is nothing more than the presumption of continuity between two possessions, consecrated by article 3492, Oiv. Code. But that presumption necessarily vanishes on proof to the contrary — on proof, for instance, that one of the ancestors had at one time sold the homestead. The conclusion would then have to be that the homestead had come back in the family by some reacquisition of it. In the instant case it will not do to argue, nor does the city argue, that, because Odelie Zebriska’s father had possession of this property before his sale of it, therefore her possession was a continuation of his. As well might plaintiff in rule argue that Odelie Zebriska’s father at one time was owner of this property, and therefore her succession is owner of it, notwithstanding the sale of it to the city. To both of these arguments the answer is precisely the same, namely: That the sale has broken the continuity.
Eor showing that Odelie Zebriska inherited this property from her father the only piece of evidence the city has is the order of court putting Odelie Zebriska in possession of the estate of her father. This order merely refers in general terms to “the estate” of Wm. Zebriska, without saying what property the *1089 estate was composed of. It does not even begin to show that this particular piece of property was part of the estate. The inventory of the succession of Wm. Zebriska would have shown the facts in that regard; but the city did not offer it in evidence, and it is not in the record. Nor is there any probability that the notary who was charged with the making of the inventory of the succession of Wm. Zebriska would have included in it this real estate which Zebriska had so recently sold by notarial act duly recorded. Said order of court, moreover, bears date February 6, 1867; that is to say, subsequent to the time when Odelie Zebriska is admitted to have already been in the physical possession of the property.
The facts of the ease do not show, therefore, that Wm. Zebriska continued in possession of the property after his sale to the city, and still less that he maintained possession of the property until his death and transmitted it by inheritance to Odelie Zebriska ; and, in consequence, the third proposition involved in the contention of the city, does not arise in the ease. That proposition is that a vendor who continues in possession of the thing he has sold must be held as matter of law to do so in the name of and for the account of his vendee, or, in other words, by a precarious title.
If, however, the court were mistaken in the appreciation hereinbefore made of the facts, still the city would have no case. The question of whether a vendor has continued in possession for himself or another is primarily a question purely of fact. Whether one’s possession is for self or for another is primarily a question of fact. Where the evidence is unquestionable one way or the other, there can be no controversy. If, for instance, the evidence showed that as soon as the sale had been completed the vendor had notified the vendee that he would not surrender possession, but would continue to hold the property in his own name and for his own account; and if, in pursuance of that notice, he had for 30 years thereafter continued said possession, resisting every effort of the vendee to oust him — there could be no question but that he had possessed in his own name and for his own account, and not in the name of and for the account of the vendee, and there could be no question but that the prescription of 30 years would apply. In such a case the only action the vendee would have had for enforcing his rights under the sale would have been an action for immovable property; and by article 3548, Oiv. Code, “all actions for immovable property are prescribed by thirty years.” In such a case, to say that the vendor was holding for the vendee would be simply to make an assertion contrary to the facts; and to say that the prescription of 30 years did not apply would be simply to legislate out of existence for that particular kind of action the prescription of 30 years.
The question of whether the continued possession of the vendor has been for self or for another can become a question of law only from the point where it ceases to be a question purely of fact; that is to say, where the evidence leaves it doubtful whether the possession was or not for self, as where the possession which existed before the sale has simply continued, with no outward sign of whether from and after the sale it was for the vendor or the vendee. In such a ease the law may step in and decide the matter by a legal presumption. The natural inference in such a case would be that the vendor had continued in possession only by sufferance and with the tacit understanding that he would yield to the vendee on demand. And that is the view taken by the common law, which we find stated in 1 A. & E. E. 818, as follows:
“Possession of Vendor. — Though the mere continued possession of the vendor of land. a«?t-er conveyance executed, is not adverse to his vendee, or one claiming under him, yet there is nothing in their relations which will prevent the vendor from acquiring a title by adverse possession ; and if the intention to hold adversely *1091 is manifested by some unequivocal act of hostility, brought to the knowledge of the vendee, the statute of limitation will begin to run.”
Assuming, then, that the question of whether the vendor who has continued in possession of the thing sold has done so for himself or for the vendee is primarily a question of fact, and assuming, for argument, that the facts of this case show that Wm. Zebriska continued in possession, and maintained that possession until his death, and transmitted it by inheritance to Odelie Zebriska, and passing to the inquiry whether, in case Wm. Zebriska continued in possession, he did so as a matter of fact for himself or for the city, we find that the statement of Zebriska which is the sole reliance of the city for showing said continued possession is in the hands of the city a double-edged sword. Zebriska’s assertion is that he was owner and in possession; that is to say, that he was in possession as owner. Therefore the only evidence the city can invoke for showing Zebriska’s possession after the sale shows a possession as owner; and, of course, upon this condition of the evidence the city cannot contend that the possession was not as owner.
The decision in the case of Roe v. Bundy, 45 La. Ann. 398, 12 South. 759, invoked by the city, has no application under the facts of this case. In that case the vendor had continued in possession. That fact not only was not denied, but was expressly alleged, by the plaintiff, and the court, in deciding the case, laid stress on the peculiarity of the pleadings; and the court also emphasized the fact that there was nothing to show what had been the character of the possession after the sale whether as owner or otherwise. True, the syllabus is broadly to the effect that “a vendor, until delivery to his vendee, occupies the position of a precarious possessor. His detention of the property sold is the vendee’s possession of the same.” But that syllabus is broader than the facts of the case called for. There was nothing in the-facts of the ease to show whether the possession of the vendor after the sale had been ins point of fact as owner, or by mere sufferance.
The case at bar can be and is decided on its facts, and hence the question of what is-the Judgment of the civil law on a ease where the continued possession of the vendor is unexplained need not be gone into; but the writer of this opinion, without discussing the point, and merely as the expression of his own individual view, upon which the court is not called upon to express itself one-way or the other, will add that in his opinion the decided weight of civil law authority is-to the effect that such unexplained continued' possession of the vendor is presumed to be for himself, and he will add, further, that by textual provision of the Code delivery of possession accompanies the notarial act of sale of immovable property, and that consequently under our Code such a thing as a notarial! sale of immovable property without delivery is an impossibility.
Merely for the sake of fullness, we will add that plaintiff in rule’s plea of prescription of one year is founded on the fact, that under an assessment to Odelie Zebriska the property in question was sold at tax sale, subject to the usual right of redemption within one year, and that Odelie Zebriska exercised this right and obtained a retrocession of the property. The contention is that this had the effect of creating a new title and beginning a new possession. But such is not the case. The right of redemption is a dissolving condition, and the effect of its exercise is to dissolve the sale, placing matters in the same situation as if the sale had not taken place (Civ. Code, art. 2045); and, as a matter of course, a sale that has never-taken place cannot create a new title or begin a new possession.
It is therefore ordered, adjudged, and decreed that the Judgment appealed from be *1093 set aside, and that there be judgment rejecting and dismissing the intervention of the city of New Orleans at her cost, and making absolute the rule taken herein upon Wesley Williams, adjudicatee, and condemning the said Wesley Williams to accept title to the following described property, namely: Squares 117 and 124, and all of square 116 except two certain lots of square 116 sold to Marcus Hartig by Wm. Zebriska by act before S. H. Lewis, notary public, on thé 31st day of March, 1848, of the town of Harlem, parish of Jefferson, as per a sketch by F. Wilkinson, surveyor, approved by L. Bringier, surveyor general, January 12, 1837, deposited in the office of William Boswell, later Edward Barnett, notary public, in the city of New Orleans, La. — and condemning the said Wesley Williams to pay to the succession of Odelie Zebriska the price of the adjudication of the said property to him on the 16th day of August, 1906, namely, the sum of $2,220, and the taxes on said property due at the date of said adjudication and thereafter accrued on said property, together with the costs of the rule herein, except that part of the costs occasioned by the intervention of the city of New Orleans. Costs of .appeal to be paid by the city of New Orleans.