Statement of the Case.
MONROE, J.
Plaintiff alleges that defendant is slandering her title to a tract of land described as the W. ½ of S. E. ¼ of Sec. 5, Tp. 19, R. 16, in the parish of Caddo, Which land she acquired by purchase from W- B. Ogilvie, as per deed, a copy of which is said to be annexed to and made part of her petitibn; that Ogilvie owned and possessed said land under deed from Mrs. Julia 15. Miles, recorded in Conveyance Book 14 of said parish, page 538; that Mrs. Miles owned and possessed under deed from Frank F. Jeter, recorded in Conveyance Book 11 of said parish, page 754; and that all of said -parties, with petitioner, have liad actual possession of said land more .than 10 years. Wherefore, she prays for citation and for judgment “quieting her in her ownership and possession of said land, and ordering Said company to stop slandering her title thereto”; also condemning it to pay $200 as damages, etc.
Defendant denies that plaintiff is in possession, and “in the alternative,” alleges that:
“If it be found that plaintiff is in possession, * * * your defendant, by asserting a claim qf ownership, has not slandered petitioner’s Utle, * * * because defendant is the owner of said property, having acquired same by mesne conveyance from the United States by the following chain of title: * * * Wherefore, defendant prays that plaintiff’s demand be rejected, and that plaintiff be decreed not to be in possession of said land; but your defendant prays, in the alternative, that, if plaintiff should be decreed to be in possession of said'land, defendant/ be recognized as owner thereof and entitled to possession.”
Thereafter plaintiff pleaded the prescription of 10 years, as a possessor in good faith, under a title translative of property.
The issue to be decided is presented by the following admission and statement of contention, to be found in the brief filed by counsel for defendant, to wit:
“We admit that plaintiff and her authors have had acts translative of this property for more than 10 years, but we contend that they have not had the possession necessary to support the prescription.”
Upon the subject of the possession, -it is shown that F. F. Jeter bought the land in dispute, included in a much larger tract, the whole of which was fenced in, from his father, W. N. Jeter, in 1889, and that he took actual possession of it and remained in possession until he sold it to Mrs. Miles in 1891. As to the subsequent possession, F. F. Jeter gives the following testimony, which is practically uncontradicted, to wit:
“Q. When you sold to Mrs. Miles, she took possession of it? A. I think she sold it pretty soon afterwards; I dont know that she ever saw the land. I think Ogilvie bought it. Q. After you sold it, did you keep it in your possession any more? A. I had other land in that pasture. Sly fence did not run across that land; that land was in a body of the land where I owned. Q. I am trying to get at this: After you sold this 320 acres of land, now, did Mrs. Miles take possession? A. Never was on the land in her life. Q. Then, how did she take possession? A. She bought it and paid for it and then sold it. Q. Then, who represented her in the possession, when she was in possession? A. Her son-in-law, Menter. Q. He was on the land? A. No, sir; he came to my house and showed me land this side. Q. What arrangement did you make with Mrs. Miles about this land of hers? A. Did not make any. Q. How was it inclosed — in the large inclosure? A. Yes, sir; and she did not object. Q. And you made no objection? A. No. sir, Q. After Ogilvie got it, did he go into actual possession of it? A. No, sir. Q. Did he make any arrangement with you? A. He tried to sell it; told me Mr. Cole was his agent. Q. I am asking you what arrangement you made with Ogilvie in regard to that 320 acres of land? A. Well, I do not know; they thought it was of such little value, did not think it worth looking after. Q. So you had no arrangement with him?. A. No, sir. Q. About your possession, if you had it in possession, you had no arrangement with Ogilvie about it? A. No, sir. Q. Do you know when Mrs. Miles bought the land *113 from Ogilvie? A. No, sir; I do not remember. Q. You never made any arrangement with Miss Piles for the land? A. No, sir. Q. Never paid any rent for the land to Miss Piles? A. No, sir; she could have fenced her land out if she did not want any stock on it; I had a fence on my land. Q. Was not her land inclosed in that general fence? A. Yes, sir. Q. Do you think she knew anything about your fences? A. I did not care about it. * * * Q. You fenced up the whole tract of 740 acres? A. It was under fence when I bought it. Q. It was under fence then? A. Yes, sir, an old rail fence'. Q. What became of the old fence? Was it taken down or burned? A. Yes, sir, burned up. Q. Then you put a wire fence around the whole place? A. Yes, sir. * * * Q. The wire fence was all around this land in controversy here? A. Yes, sir.”
There was judgment in the district court in favor of the plaintiff, save as to her demand for damages, and defendant has appealed.
Opinion.
It is not disputed that, if plaintiff can unite the civil possession flowing from her title with the actual possession of Jeter, the author of her title, the prescription upon which she relies is established; but it is said that Jeter’s possession was adverse to that of his own vendee, and as mere civil possession which does not follow, and cannot be connected with, actual possession, is not a sufficient basis upon which to rest the prescription aequirendi causa, that she fails to sustain her position. This contention is not supported by the fact; the evidence showing that (whether such a thing be legally possible or not) the idea of holding any possession adverse to that of his vendee, or of his vendee’s successors in title, never occurred to Jeter. He seems to have considered that, having sold the property, the purchaser and subsequent owners were at liberty to 'do with it as they pleased, but that he was under no obligation to segregate it from his land or to keep his stock from pasturing on it by fencing it in. He says, however (referring to plaintiff):
“She could have fenced her land out if she had not wanted my stock on it; I had a fence on my land.”
Other than that he thus allowed his stock to graze on .it, and that it formed part of a tract of some 700 acres around which he had built a wire fence, he pretended to have no possession, such possession as he thus had being held subject to the pleasure of the owner, and, being so in fact, was in law the possession of the owner. "We find nothing, either in the case of Roe, Wid. Green v. Bundy, 45 La. Ann. 398, 12 South. 759, or in the matter of the Succession of Zebriska, 119 La. 1076, 44 South. 893, to sustain the view propounded by defendant’s counsel. To the contrary, the opinions in both those cases sustain our conclusion that, in the instant case, the vendor’s possession was the possession of his vendee and of the subsequent holders of the title conveyed by him, and may properly be added to his previous actual possession and to their subsequent civil possession for the purposes of the prescription here relied on. The judgment appealed from is, therefore, affirmed.