No. 2242

Second Circuit

---

ROBERTS v. PHILLIPS

---

(April 8, 1927. Opinion and Decree.)
(May 13, 1927. Rehearing Refused.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Appeal—Par. 520, 566.**

Where an exception is overruled in the lower court and the party filing the exception does not appeal from the court's ruling, and the case is brought up to this court by the opposing party, the ruling of the District Court is not before this court for review.

2. **Louisiana Digest—Appeal—Par. 499, 500.**

Answers to an appeal and motions to amend the judgment may be filed in this court by the appellee within the first three days of the actual sittings of any regular session, provided they are tendered for filing previous to argument and submission of the case, but not afterwards.

3. **Louisiana Digest — Prescription — Par. 12, 22, 48.**

Ownership of immovables is prescribed for by thirty years' possession without any need of title, but the possession on which this prescription is founded must be in the nature of physical detention, must be continuous and uninterrupted during all that time, public, unequivocal and under the title of owner.

4. **Louisiana Digest — Prescription — Par. 12, 22, 31.**

Where one sells a tract of land for adequate consideration by act translative of property, which is duly recorded and remains in possession of the property sold, he can not acquire the property by prescription as against his vendee, unless he does some act or in some way makes known to the vendee his intention to possess adversely to him.

5. **Louisiana Digest — Prescription — Par. 9, 29.**

Prescription ceases to run whenever the possessor makes acknowledgment of the right of the person against whom he interposes this plea.

Appeal from the Second Judicial District Court of Louisiana, Parish of Webster. Hon. J. E. Reynolds, Judge.

Action by Mrs. Olive G. Roberts against A. H. Phillips, Sheriff, et al.

There was judgment for defendants and plaintiff appealed.

Judgment reversed.

L. K. Watkins, of Minden; Roberts & Roberts, Jr., of Shreveport, attorneys for plaintiff, appellant.

Drew & Drew, of Minden, attorneys for defendant, appellee.

ODOM, J. John W. Smith died in the year 1921 leaving a last will and testament, but named no executor. On May 1, 1922, J. W. Baker, a son-in-law of the deceased, applied to the court to have the will admitted to proof and to probate and to be appointed dative executor thereof, which was done by order of the court on July 31, 1922.

Baker qualified by giving bond and taking the oath.

On February 24, 1923, upon the application of the executor, the court ordered all the property belonging to said succession sold by A. H. Phillips, sheriff, to pay debts.

Along with other property of the succession, the sheriff caused to be advertised for sale the southeast quarter of the northeast quarter of Section 30, Township 21 north, Range 10 west, and the southeast quarter of the southeast quarter of Section 13, Township 21 north, Range 11 west, containing eighty acres, situated in the parish of Webster.

On December 8, 1923, plaintiff brought the present suit, alleging that she is the owner of the above described property, and asked that an injunction issue restraining the sheriff from selling same, and that:

"J. W. Smith, executor, be duly cited to answer this petition, and that, after due service hereof, and after due proceedings had, she be declared to be the owner of the said described property, and quieted in her possession of same."

The sheriff was cited but made no answer. Issue was joined as to him by default. The executor tendered in limine an exception of res judicata, alleging as a basis therefor that a previous suit between the same parties, involving the same cause of action, had been previously dismissed by the court on exception of no cause and no right of action, that appeal from said judgment was waived, and that therefore said judgment was final.

This exception was tried by the court and overruled.

The executor then filed answer in which he denied that plaintiff owned the property in controversy, but, on the contrary, alleged that the property is owned by the succession of Smith of which he is executor, and asked that said succession be decreed the owner thereof, and that a certain deed, alleged upon as the basis of plaintiff's title, be adjudged a mortgage and the indebtedness represented thereby be recognized as fully paid and accordingly that said instrument be ordered cancelled and erased from the records.

As against defendant's reconventional demand to be decreed the owner of the property, plaintiff plead the prescriptions of one, three, five, ten and thirty years.

These pleas were by the court referred to the merits.

The lower court rejected plaintiff's demand and adjudged defendant to be the owner of the property in controversy.

Plaintiff appealed.

## ON THE PLEA OF RES JUDICATA

This plea was tried separately in the lower court and overruled.

Counsel for appellee, in oral argument and in brief, ask this court to reverse the ruling of the lower court on that point.

But the lower court's ruling on that plea is not before us for review. The exception was overruled, but there was no appeal taken from the court's ruling, nor did the appellee answer the appeal. The case was brought to this court upon appeal by the other party, which did not bring up for review the ruling of the lower court made in appellant's favor.

Code of Practice, 888, 889.

Siragusa vs. Ill. Cent. R. R. Co., 152 La. 745, 94 South. 376, and authorities therein cited.

Appellee filed in this court an answer to the appeal asking that the judgment of the lower court be affirmed—

"but amended to the extent to sustain the plea of res judicata filed in the lower court."

This answer to the appeal and motion were filed in this court after the case was argued and submitted to the court and was, therefore, too late.

Act 103 of 1908, amending Article 890 of the Code of Practice, specifically provides:

"That in the Courts of Appeal for the several circuits of the state such answers shall be allowed filed before argument within the first three days of the actual sittings of any regular session of said Courts of Appeal."

Appellee filed his motion to amend on the third day of the term, which would have been in time if the case had not been argued and submitted the day before.

## ON THE MERITS

Mrs. Roberts, plaintiff in the injunction suit, has a perfect record title to the land in dispute. She traces her title back to the United States through an unbroken chain of transfers. She is a daughter of A. Goodwill who died in 1904 or 1905. In 1917 the heirs of Goodwill, by notarial act, partitioned the property owned by him at his death. This land was set apart in the act of partition to Mrs. Roberts. Goodwill, plaintiff's ancestor, acquired the property, along with eighty acres more from John W. Smith, whose heirs now claim it by deed under private signature duly proved on January 30, 1892. That deed was recorded in conveyance record, volume 6, page 564, of the records of Webster parish, on March 9, 1892, and reads as follows:

"Be it known that I, John W. Smith, of this residence, in consideration of one hundred and twenty-five dollars cash paid to me by A. Goodwill, also of this residence, have sold and hereby bargain, sell, transfer and convey to him with full delivery and possession, two tracts of land in this parish with improvements thereon, to-wit: Southeast quarter of northeast quarter, Section thirty (30), Township twenty-one (21), Range ten (10), containing forty acres more or less, and the southeast quarter of the southeast quarter of

Section thirteen (13), Township twenty-one (21), Range eleven (11), and southwest quarter of southwest quarter of Section eighteen (18), Township twenty-one (21), Range ten (10), and northwest quarter of northwest quarter of Section nineteen (19), Township twenty-one (21), Range ten (10), containing one hundred and twenty acres, more or less; title guaranteed and purchaser subrogated to all my rights against or derived from all my vendors.

"Done, read and signed at Minden in the above written parish and state, in presence of the subscribing witnesses this 30th day of January, 1892.

      (Signed) "JOHN W. SMITH.
      (Signed) "A. GOODWILL.
"Attested:
  "I. N. WALKER.
  "T. N. BRADON, JR."

Then follows an affidavit by one of the witnesses, made before the clerk of court, that he saw the parties sign.

The land now in controversy is the forty acres in Section 13 and the forty acres in Section 30.

These two tracts are more than a mile and a half apart. The land in Sectiton 30 is in the "flatwoods" and so never was cultivated. The forty acres in Section 13 joins the other eighty acres conveyed by Smith to Goodwill in the said deed.

The three forties together being known as the "Smith Home Place."

The 120-acre tract was all under one fence and was either cultivated or used for pasture. Smith had his residence, barns and other outhouses thereon.

Smith, with his family, was residing on the property on January 30, 1892, the date on which he sold to Goodwill, and had resided thereon for a number of years previous thereto. He continued to live there, possess and use the land until the date of his death, in 1921, or nearly thirty years after he sold to Goodwill, and his heirs continued in possession after his death, the possession by him and his heirs being for a continuous, unbroken period of more than thirty years subsequent to the date on which he sold to Goodwill.

As against the title of Mrs. Roberts and a sa basis of title in the succession of Smith, the executor pleads:

First, prescription of thirty years; and,

Second, that the land was sold by Smith to Goodwill with right of redemption, that Smith owed Goodwill a debt at the time of the sale, it being understood that upon payment of the debt Goodwill was to restore the land to Smith, and that in the fall of 1892, following the sale in January of that year, Smith delivered to Goodwill two bales of cotton and $75.00 in cash in full payment of the debt, whereupon Goodwill executed a deed conveying back to Smith the eighty acres of land now in controversy, which deed, it is alleged, was left in the hands of Judge Drew, the attorney who prepared it, to be recorded, but that said deed was never recorded and cannot now be found.

If Smith and his heirs acquired title to the property by prescription, the other defense, or the other basis of title, need not be considered; and if, in fact, Goodwill sold the property back to Smith, prescription need not be invoked as a basis of title.

The District Court admitted testimony on both points, and counsel for the respective sides, both in oral argument and

in brief, have considered both points together, and we shall do likewise.

I

Under Civil Code, Article 3499:

"The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith."

And, under Article 3500:

"The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner."

The possession of Smith and his heirs was continuous and public for more than thirty years subsequent to his sale to Goodwill. Mrs. Baker, the daughter of Smith, and other witnesses, testified that it was always their understanding that Smith was the owner of the land and that he possessed as such. To all outward appearances he was the owner of the land. He cultivated one forty acres of it and cut firewood and sold timber from the other forty acres. Mrs. Baker, his daughter, who is thirty-five years old, and who lived with her father up until the date of his death, testified that he always claimed the land as his own. But there is incontrovertible proof in the record that Smith did not possess the land through all those years unequivocally and as owner thereof. He sold his home place the 120 acres on which he resided, including the land in Section 13 now in controversy, as one tract to Goodwill in 1892. Twenty years later, in 1912, long after Goodwill's death, Smith purchased back from the heirs of Goodwill eighty acres of the 120-acre home place. The sale by Goodwill's heirs to him was by notarial act for an express consideration of $400.00, part cash and the balance represented by notes. The vendors were represented in the negotiations by Judge Robert Roberts, the husband of plaintiff.

He testified that Smith never at any time disputed Goodwill's title or pretended that he had claims to any of the land, but, on the contrary, expressed a desire to purchase the other eighty acres (that now in controversy), but stated that he was not financially able to do so.

Judge Roberts testified also that at the time he told Smith that he might continue to use the other land if he would look after it and prevent trespassing upon other lands in that vicinity, owned by the Goodwill estate, which Smith agreed to do.

The purchase made by Smith of a part of the land which he had conveyed to Goodwill by deed in 1892 was a recognition of the Goodwill title under which he held not only the land which he purchased back but of the lands now in controversy as well, for it was all conveyed to Goodwill under the same deed.

Not only that, he expressed a desire to purchase the land which his executor and heirs now claim to own by prescription. By this purchase and by his statements to Judge Roberts he recognized Goodwill's right and title to the land.

"Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed."

Civil Code, Article 3520.

Even if it be said that prescription began to run in favor of Smith back in 1892,

it did not run for thirty years, for in 1912 he acknowledged and recognized Goodwill's right and title.

It must be assumed, therefore, that Smith possessed the property under Goodwill as vendee and that his occupancy and use of the property for twenty years, from 1892 to 1912, was a matter of sufferance.

In order to acquire by prescription of thirty years, one must possess for himself as owner and not for another. The question whether he possesses for himself as owner is one of fact. In the absence of proof to the contrary everyone is presumed to possess for himself as owner.

Succession of Zebriska, 119 La. 1076, 44 South. 893.

But that presumption and the testimony of Mrs. Baker that her father possessed as owner are completely overthrown by the statements and conduct of Smith himself.

Aside from this, a vendor who remains in possession cannot acquire the property by prescription as against his vendee unless he does some act or in some way makes known to the vendee his intention to possess adversely to him.

Succession of Zebriska, supra.

Roe vs. Bundy, 45 Ann. 398, 12 South. 759.

There is no evidence in the record that Goodwill knew that Smith intended to possess adversely to him. Quite to the contrary; the evidence abundantly establishes that Smith possessed all the while under Goodwill and his heirs.

Defendant was permitted, over plaintiff's objection, to introduce the testimony of Harper Smith, son of John W. Smith, the deceased, that in the fall of 1892, the year in which Smith sold the land to Goodwill, his father redeemed the land and Goodwill executed a deed to the eighty acres in dispute.

Casting aside all technical questions as to the admissibility of this evidence, we have considered it, such as it is. But we are not convinced, in view of other testimony, that Goodwill sold this land back to Smith and evidenced the sale by a deed.

Harper Smith's testimony, in substance, is that his father needed funds in the early part of 1892; that he borrowed of Goodwill $125.00, and as security therefor deeded to him 160 acres of land; that the deed was intended as a mortgage; that his father was given the right to redeem the land; and that in the fall of the year his father did redeem the land by paying to Goodwill $75.00 in cash and by delivering to him two bales of cotton; whereupon, he says, his father had Judge Drew to draw a deed to the eighty acres of land in dispute; that the deed was signed by Goodwill and his father and attested by him and Mr. Creichton; that the deed was turned over to Judge Drew to be recorded and has never been seen or heard of since.

He does not pretend to describe the act further than to say it was a deed to the eighty acres of land now in dispute. He says it was a redemption deed of the land which his father sold to Goodwill in the early part of the year.

The making of that deed, according to the testimony of Harper Smith, took place more than thirty years before the trial of this suit, and the witness was twenty-two years old at that time. His recollection

is somewhat hazy as to the details. He says the deed was drawn by Judge Drew in his office in Minden and signed by the parties there, but he does not recall what kind of an office Judge Drew had nor in what part of the town it was located, nor how it happened that Creichton, the other witness, happened to be there.

Mr. Goodwill, Mr. Smith, Judge Drew, and the witness, Creichton, are all dead. There is no witness to corroborate the statements of young Smith. We cannot accept his testimony as proof that a deed was made. We think the witness is mistaken. The witness may be honest in his belief that there was a redemption of the land evidenced by a deed, but in view of the circumstances and the subsequent conduct of the elder Smith, we do not believe there was.

In the first place, according to Harper Smith his father owed Goodwill only $125.00 at the time the original deed to the 160 acres was passed. Adding interest to that sum at the excessive rate of 20%, the elder Smith owed only $150.00 at the end of that year. Harper Smith says his father delivered two bales of cotton and paid $75.00 in cash to redeem the property. The proceeds of the cotton and the cash were sufficient to pay the entire debt, so that if the payments were intended to cover the original debt and to redeem the property it would seem reasonable to assume that the whole of the tract of 160 acres would have been deeded back instead of only 80 acres, as young Smith says there was. His theory is that the whole debt was paid, but he does not pretend to explain why all the 160 acres of land was not included in the deed.

Then, too, it seems reasonable to assume that if the elder Smith had been willing to accept a deed to only part of the land, when the whole debt was paid, he would have wanted that part which was most valuable to him.

The evidence shows conclusively that the two forty acres of land which Harper Smith says were included in the deed were the least valuable to Smith. The forty acres in Section 13 was used principally for pasture or meadow and the other forty acres in Section 30 is nearly two miles away and in the "flatwoods" and was useful only for firewood. The timber was not valuable at that time. Smith's residence was on the other eighty acres of land sold to Goodwill. If he was permitted to redeem and take back any portion of the land, it is reasonable to suppose that he would have taken back that part most useful to him; and yet young Smith says that only the least valuable portion of the land, or that now in controversy, was included in the redemption deed.

Again, if the elder Smith had redeemed this land in 1898, he, of all men, would most likely recall that fact. He did not recall it, for in 1912 he purchased from the heirs of Goodwill the eighty acres on which his residence was situated and which was most valuable to him, and at that time told Judge Roberts that he would purchase back the other land but was not financially able to do so.

In all his talk with Judge Roberts about the land he said not a word about having redeemed the land back in 1892 and made no claim to it, but agreed to look after other lands owned by the Goodwill estate

as a consideration for the use of the land now in dispute.

There is no question but that a great deal of the testimony found in the record was inadmissible under the pleadings and for the purposes for which it was offered. However, as stated, we have considered it in connection with the entire transaction.

We have considered the three scraps of paper offered in evidence to corroborate the testimony of young Smith. The three pieces, we think, constitute the whole of a mutilated document, although they seem to have been considered by counsel as forming two documents.

Taken as one instrument, it reads:

"John W. Smith—In Account with Goodwill, Minden, La.

"17 Dec. 1892, Sale 2 B/C.

"9587     500

"9588     5110 1010# 7¼ To Cr on cash on land $73.22."

The part of the writing, "To Cr on cash on land $73.22", seems to have been written by the same party who wrote the other, but it does not appear to have been written with the same pen at the same time. Just what the meaning of the document is we do not know. It may be that the proceeds of the sale of the cotton were intended to be credited on rent of the land for that year. That is the contention of Mrs. Roberts, and she offered to introduce the books of Goodwill to show that but, on objection, the books were not admitted. Or it may be, as contended by defendant, that the amount was intended as a credit on the purchase price of the land. But the document is not sufficient corroboration of the testimony of young

Smith to warrant us in holding, in the light of all the other facts and circumstances, that Goodwill deeded the land in dispute back to Smith.

As already stated, Mrs. Roberts, the plaintiff, has a perfect outstanding record title to the land, which cannot be overthrown by such testimony as is found in the record.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be reversed, and it is now ordered and decreed that the title of Mrs. Olive Goodwill Roberts, the plaintiff, to the southeast quarter of the northeast quarter of Section thirty, Township twenty-one north, Range ten west, and the southeast quarter of the southeast quarter of Section thirteen, Township twenty-one north, Range eleven west, be and the same is hereby recognized, and that A. H. Phillips, sheriff of Webster parish, be enjoined and prohibited from selling the same in these proceedings, as prayed for. Appellant to pay all costs.