58 So.2d 225 (1952)
A. M. EDWARDS CO., Inc. et al.
v.
DUNNINGTON.
No. 3522.
Court of Appeal of Louisiana, First Circuit.
March 24, 1952.
Rehearing Denied April 28, 1952.
*226 Benj. W. Miller, Bogalusa, Mary Purser, Amite, for appellants.
Reid & Reid, Hammond, for appellee.
DORÉ, Judge.
This suit was originally instituted by A. M. Edwards Co., Inc., and subsequently Bayard Edwards was substituted as plaintiff. In its petition, the original plaintiff alleged that it was the owner and possessor of a certain tract of land, together with all the timber located, standing or being thereon, being situated in Tangipahoa Parish, and described as being, "Twenty (20) acres of land located in the Northeast Quarter of the Northwest quarter of said Section 13, more fully described as commencing at the Northwest corner of said Northeast quarter of the Northwest quarter, running thence South along the quarter section line 700 feet, more or less, to a fence; thence East 250 feet, more or less, along said fence to a corner; thence in a Northeasterly direction to the Northeast corner of the Northeast quarter of Northwest quarter to point of beginning, being in Section 13, T-6-S, R-9-E"; it alleged that it acquired the said land and timber thereon from the sole heirs of the late Seymore O. Hoover and his wife, Lucy Hano Hoover and their *227 daughter, Miss Adeline Hoover, by deed dated December 31, 1948, and recorded on February 19, 1949, in the conveyance records of Tangipahoa Parish. It further alleged that notwithstanding its ownership of the said land and timber situated thereon, Breed Dunnington, made defendant herein, has entered thereon, has cut and is continuing to cut piling and other timber therefrom in violation of its rights in the premises.
It prays for judgment recognizing it as the owner of the timber and for an injunction restraining the defendant from cutting and removing any of the timber, with reservation of its right to claim damages for the value of the timber already cut and removed. A restraining order and rule to show cause was obtained and served upon the defendant.
The defendant, in his answer, categorically denies each and every allegation of plaintiff's petition; in further answer, defendant avers that the property and standing timber thereon described in plaintiff's petition, belong to the Lake Superior Piling Company, it having acquired the same by deed, duly recorded in the Conveyance Records of Tangipahoa Parish, from Houlton Brothers and they from W. T. Jay, as per deed duly recorded in the Conveyance Records for Tangipahoa Parish. He further avers that under an agreement between the said Superior Piling Company and himself, he purchased certain poles and piling from the said property, to be paid for when cut and in the amounts cut. He reserves his right to proceed against plaintiff, in a separate action for any damages he may have sustained by virtue of the issuance of the restraining order. His prayer is for dismissal of plaintiff's demand.
The case was tried and judgment was rendered in favor of the plaintiff and against defendant, recognizing plaintiff, Bayard Edwards, to be the owner of the land previously described and the timber thereon, and permanently enjoining and restraining the said defendant from cutting and removing any of the timber on the above described property. There was further judgment in favor of plaintiff and against defendant for the full sum of $236.50. The defendant has appealed.
We find it hard to classify this action in that it partakes of both the petitory and possessory action. However, from the record, it appears that the litigants treated the action as a petitory action, and the trial judge in his written reasons, likewise treated it as such, since he passed on the title to the property, and adjudged the ownership of the land in the plaintiff. We will so treat it.
It is now elementary that in a petitory action the plaintiff must recover on the strength of his title, and not on the weakness of his opponent. The burden of proof lies throughout the case upon the plaintiff to prove a superior title in himself, and to merely make it probable is not enough.
It appears from the record that the plaintiff, on the trial of the case, attempted to prove title by the prescription of thirty years. To the offering of proof thereof, and before evidence was adduced, defendant offered a "blanket", general objection to such evidence on the ground, "that he cannot tack on to his own possession that of his authors in title in order to eke out the prescription of thirty years, and that the parties who are supposed to have the purported thirty year possession are not parties to the suit and that, in the Succession of Seymore O. Hoover, the property herein forming the subject of this suit, is not claimed by the heirs, not inventoried and not in the judgment." Testimony was admitted subject to the objection and the objection was made general by the court.
In this court, the defendant does not seem to press his objection to the testimony. His objection seems to be abandoned. We, however, find no merit in his objection for at least one reason, to wit: An owner of land can tack on to his possession the possession of prior owners whenever there is a privity of contract. In the case at bar, in the deeds of acquisitions, the land in dispute is included therein, and the heirs, plaintiff's vendor, inherited, by operation of law, all of the rights of action which their father and mother had in the said property which necessarily included their previous possession of the said tract *228 in dispute. See Crichton v. Krouse, La. App., 142 So. 635.
In this court, it is admitted that the recorded title to the property in dispute, prior to plaintiff's acquisition from the Hoover heirs, was in the Lake Superior Piling Company, the vendor of the timber on the property to defendant, and that the Lake Superior Piling Company's title is paramount to that of plaintiff unless it be shown, by a preponderance of the evidence, that plaintiff, with the Hoovers, have had the continuous, uninterrupted, public and unequivocal possession as owner for more than thirty years. This is admittedly the only question before this court, and which is a question of fact.
The record discloses that Seymore Hoover owned the S½ of SW¼ of Section 12, upon which he had his residence in the southwest corner; Section 12 is above Section 13; and W½ of NW¼ of Section 13, all in T-6-S, R-9-E. The Lake Superior Piling owns the E½ of NW¼ of Section 13. The property in dispute is in the shape of a triangle, having as the north leg, the line dividing the two sections, the west leg, the dividing line between the E½ and W½ of NW¼ of Section 13, and the east leg, a line running from a point on the dividing line between the said E½ and W½ to the NE corner of said NW¼ of Section 13.
As to the actual and physical possession, as owner, of Seymore Hoover, of the property, we have the testimony of Clinton Hoover, who was born in 1898, and was 51 years of age at the time of trial, who testified, that in accordance with his memory, his father had the disputed property under fence for more than forty years; that at first the fence was a rail or stake and rider fence; that in 1909 the fence was blown down by a storm and was rebuilt and in 1915, it was again blown down and again rebuilt, and in 1922 or 1923, it was rebuilt of wire, the remnants of which are still standing; that his father used the disputed property as a pasture. He disavows that his father ever obtained permission of the then owner of the property to build the fence and use the property as a pasture. He states that neither the Piling Company or its predecessor in title ever cut any timber on the land. On cross-examination, he admits that his father had no title to the property in dispute; he categorically denied that the disputed property was "logged" by Lake Superior or the Houltons, at any time, contending that there wasn't any timber on the property; he admits that the property was not inventoried by his father's succession.
It was admitted that if Theodore Hoover, one of the heirs of Seymore Hoover, and his wife were called as witnesses, that their testimony would be the same as Clinton Hoover.
Mr. George Gottschalck, 56 years of age, testified that he was familiar with the late Seymore Hoover and the property in dispute; that the property had been fenced, first by an old rail fence, blown down, rebuilt, again blown down and rebuilt, and on the third time, it was torn down on account of timber operations. He is positive in his testimony that the Houltons or the Lake Superior Piling Company, while Hoover was living, cut some timber inside the enclosure in 1914, or thereabouts, and destroyed the fence, necessitating the rebuilding of the fence by Hoover with his assistance; he names as witnesses to the cutting and removing of the timber by the Houltons or Lake Superior Piling Company, a Mr. Bennett and a Mr. Core; that the Houltons or the Lake Superior Piling Company removed "quite a bit" of timber from the disputed property, and the operations were done in the presence of Seymore Hoover.
Mr. Stenger Thompson, 67 years of age, testified that Mr. Hoover had the disputed property under fence and in possession when he was about 15 years old; that the disputed property was used mostly as a pasture, and that, at no time to his knowledge was Hoover's possession disturbed. On cross-examination, he states that the property was under fence in 1914 and that no timber was cut inside the fence in 1914 by the Houltons (author in title of the Lake Superior Company). On cross-examination, he states that in 1914, he operated, that is, cut and removed timber, "right down off of the fence about 100 yards or something like that", and that he did not *229 "go through the fence" but would not say that Gottschalck or Bennett didn't go through the fence; he also states that Hoover was present "once in a while" while operations were going on.
The plaintiff then filed an ex-parte affidavit of Stenger Thompson, J. M. Murray and Mrs. Frederick Gottschalck to the effect that Seymore Hoover had been in the "open, notorious and undisturbed" possession, under fence, of the disputed property, for more than 50 years, this affidavit bearing date of October 30, 1948. This offering was objected to by defendant, which objection was overruled. This objection should have been sustained.
The defendant offered the testimony, taken by deposition, of Mr. Charles H. Houlton, age 85, President of the Lake Superior Piling Company, and also a vendor of said Piling Company. In his deposition, he states that the said Piling Company is the record owner of the land in dispute; that it has never disposed of it. He states that the company gave Mr. Hoover the permission to fence the N½ of the NE¼ of NW¼ of Section 13, T-6-S, R-9-E, it being their policy to encourage their neighbors to enclose their cattle under fence, thereby tending to improve its neighbor's stock and protect the company timber from trespassers. He states, "Mr. Hoover never at anytime claimed this property as against Lake Superior Piling Company. On the contrary, in 1943, after Mr. Hoover moved from his home because of the bomber range, he stated to me that he had always protected our timber against trespass. He also assured me that if he had not protected it, it would have been stolen. He admitted that Lake Superior Piling Company owned the land and that he had protected it from trespass. This admission took place near the Amite Court House in 1943. In 1917 the company had full possession of this property. We built a railroad, had skidders and logging machinery on this and adjoining properties, and operated the logs and piling. In about 1942 or 1943, Mr. Hoover leased his lands, which adjoins the property in question, to the U. S. Government for use as a bomber range. He made no attempt to include this land in his lease. On the contrary, the Lake Superior Piling Company did lease to the U. S. Government, this property and did collect the rentals for several years." In cross-interrogatories, Mr. Houlton states that the company gave Mr. Hoover permission to fence the property in dispute in 1922; that he has no knowledge when Mr. Hoover actually fenced this property; that the company was in full possession of the property; that he does not think the Hoover heirs have been in possession of this property since he leased it to the U. S. Government for bombing practice purposes in 1942; that he met Mr. Hoover for the first time in 1922; that he has no knowledge that Mr. Hoover had possession of the property by having the same under fence at the time of the acquisition of the witness and his brother from William T. Jay (in 1906); that the company cut and removed timber therefrom in 1917; that the company has not any agreement in writing with Mr. Hoover concerning the fencing of the disputed property.
The defendant then offered in evidence the entire record of the Succession of Seymore O. Hoover and Mrs. Lucy Hano Hoover, with particular reference to the fact that the property in dispute is not included in the inventory nor in the judgment sending the heirs in possession. We see very little weight to be attached to this offering, for the reason that under laws of succession, his descendants inherited all of property of the decedent, which includes every right of action, and they did not need to be recognized and sent into possession. Such rights of inheritance springs or descends at the moment of death. The only weight to be attached to such fact is that the Hoover heirs, at that time, were not claiming the property as owners.
The defendant then offered the testimony of Mrs. Edna S. Zemoniak, the private secretary of Mr. Charles Houlton. The witness testified that she was present at a conversation between Mr. Houlton and Mr. Seymore Hoover, relative to the disputed property wherein Mr. Hoover said to Mr. Houlton, "Mr. Charlie, you ought to pay me for watching that timber for you, I have watched that timber for a number of years *230 and you ought to pay me something for watching your timber," to which Mr. Houlton replied, "How about me letting you use that land all these years for your cattle?" The witness could not state when the conversation took place, but she is certain that it took place, "quite a while ago" while she was working for Mr. Houlton and that she worked for Mr. Houlton for a period of about 20 years.
The defendant then offered the testimony of Ernest Leroy Bennett, 64 years of age, who testified that in 1914, he logged the timber on the disputed property for the Houltons (predecessor of Lake Superior Piling Company). That the operation was conducted inside the fence; that he saw Gottschalck, Thompson and Mr. Hoover at the operation and Hoover made no objection thereto; that he never heard of Hoover claiming the ownership of the disputed property but that the Houltons and the Piling Company have always claimed ownership of the tract. On cross examination, he testified that in 1914, the property was under fence and that Hoover was using the property as a pasture; that they logged the timber to the fence, and then used a hoisting machine to load the logs.
The defendant then offered the testimony of Auguste Bennett, a brother of Ernest Leroy Bennett, whose testimony is in line with that of the witness Ernest Leroy Bennett. Likewise is the testimony of Mr. George H. Gore, 61 years of age.
The property in dispute was identified by the testimony of G. M. Moore, and the description of the property given by measurements. The surveyor identified the plat of survey. The surveyor further testified that he found remnants or evidence of an old wire fence and that the area of the disputed property is about nine acres.
Mr. Harman LeBourgeois, an office and field employee of the Piling Company, testified that along in 1939 or 1940, at Mr. Hoover's home, situated not far from the property in dispute, that he had a conversation with Mr. Hoover, at which time he informed Mr. Hoover that the Piling Company was about to cut and remove the standing timber on the property in dispute whereupon Mr. Hoover said, "Mr. Houlton ought to pay me a little for watching it"; at that time, Mr. Hoover did not claim ownership of the timber nor did he raise any objection to its removal.
The record discloses that the property in dispute has, for the years 1940-1949, been assessed as belonging to the Lake Superior Piling Company, and the taxes paid thereon and that on January 15, 1949, after the sale by the heirs of Hoover to plaintiff, the disputed property, was assessed to S. O. Hoover on supplemental rolls for the years of 1946-1947 and 1948; that during the years of 1940-1949, inclusive, with the exception of the supplementary rolls above referred to, neither S. O. Hoover nor the estate of S. O. Hoover was assessed for the disputed property.
The record of the Estate of Seymore O. Hoover discloses that Seymore O. Hoover died on January 18, 1945. There is no record of the death of Mrs. Lucy Hano Hoover, his surviving spouse.
Under these facts, we are convinced that in 1914, the disputed property was under fence. However, during that year, we are also convinced that in the presence of and without objection on the part of Mr. Hoover, the timber thereon was removed by the Houltons or the Lake Superior Piling Company. Whatever possession Mr. Hoover may have had, it certainly was disturbed by such operation. Mr. Hoover, at that time, cannot be said to have possessed as owner. We grant that from that time until the cutting of the timber by the defendant some time in 1949, the exact time not being shown, that the property remained under fence, evidencing possession by the Hoovers for a period of thirty-five years. But this alone is not sufficient on the part of the Hoovers. They must show that such possession was as owner. The burden of proof rests upon them to show that they possessed as owner. They must show this to a certainty; to make it probable is not enough. The question now arises, have they done so?
We find the following facts going to show that Mr. Hoover did not possess as owner. We have the testimony of Mr. Charles Houlton, President of the Piling Company, to the effect that during the time *231 Hoover was in possession of the tract, such possession was by his permission and sufferance. Mr. Houlton gives a valid reason to grant such permission. Furthermore this witness testified that as late as 1943, Mr. Hoover recognized the ownership in the Piling Company and requested some payment for the protection of the timber thereon. We may say that the trial judge did not give much credence to Mr. Houlton's testimony for the reason that it was somewhat in conflict with other witnesses as to the logging operation in 1914. However, we see no reason to disregard his testimony altogether. It is entitled to some weight. In fact we find his testimony corroborated by other testimony in the record, for example, Mr. Houlton states that in 1922, he gave Mr. Hoover permission to build a fence and we have the testimony of Clinton Hoover that the fence was reconstructed of wire at that time.
Furthermore we have the testimony of Mrs. Zemoniak and Mr. LeBourgeois, during the period from 1914 to 1940, that Mr. Hoover recognized the title to the property in the Piling Company and that he had the possession thereof by permission and sufferance of the said Piling Company.
For a certainty, the testimony of Mr. Houlton, Mrs. Zemoniak and Mr. LeBourgeois is to the effect that Mr. Hoover in 1922 recognized the Piling Company's title to the land.
"Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed." Civil Code, Art. 3520; Roberts v. Phillips, 6 La. App. 394. Another significant fact to show the lack of possessor as owner of the said property by Mr. Hoover is that during all that period he did not have himself assessed for the property and failed to pay any taxes upon the property. We admit that the assessing of and the payment of taxes on property alone is not sufficient in itself to support possession of or show title to property, but, however taken in consideration with other facts, it tends to support a claim of possession as owner.
The evidence shows that the United States Government took over, or leased, in 1942, this property, including that owned outright by Hoover for a bombing range. Yet we fail to find any evidence wherein Mr. Hoover made any attempt to lease or did lease this disputed tract to the government. To the contrary, we find wherein the defendant attempted to show that the Piling Company had leased his property to the Government. Further, we have the uncontradicted testimony of Mr. Houlton, without any objection thereto, that the Piling Company had so leased the property.
In the written reasons for judgment, the trial judge states: "Summing up the matter, we have reached the conclusion that Seymore Hoover was in possession of the land in dispute in 1914 and for several years prior to that. He did not convey the land nor acknowledge any ownership in anyone else in writing." Italics ours. It appears that the judge held that he had to acknowledge the ownership in some one else in writing. He quotes no law for his holding and we do not find such a rule of law. On the question of prescription of thirty years, parol testimony is admissible to show any acknowledgment of title in some one else. It is a declaration against interest.
In conclusion, we are of the opinion that the plaintiff has not borne the burden of proof that he and his predecessors in title and Mr. Hoover has had the possession as owner of the said property as required by law.
For these reasons, the judgment appealed from is annulled, reversed and set aside. It is now ordered, adjudged and decreed that there be judgment in favor of defendant and against plaintiff dismissing plaintiffs suit at its costs, with reservation unto defendant of whatever rights for any damages which he may have sustained by the wrongful issuance of the writ of injunction.