No. 11,088.

JULIA C. ROE, WIDOW OF JOHN GREENE, VS. THE HEIRS AND EXEC-UTORS OF LOUIS F. BUNDY.

1. A vendor, until delivery to his vendee, occupies the position of a precarious possessor. His "detention" of the property sold is his vendee's "possession" of the same.

2. If a vendor could before delivery by some act of his own, such as is termed by the French commentators an "acte de contradiction," place himself in a position of hostility to his vendee and alter the character of his possession from that of its origin by an "interversion of possession," it would be required of him for the purpose of acquiring ownership of the property by the thirty years' prescription that he should clearly establish that knowledge of this change of position had been brought home by him to his vendee.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*J. McConnell, Jr.,* for Plaintiff and Appellant.

*T. H. Thorpe* and *Gus A. Breaux* for Defendants and Appellees.

1. The vendor of land is estopped by his warranty of peaceable possession from doing any act in disturbance of the vendee's possession, and hence can not plead against his vendee the prescription of thirty years *acquirendi causa.* R. C. C., Arts. 2479, 2476, 2504; Sedgwick & Waite on Trial of Title to Land, 543; 13 An. 13; 34 An. 648; 43 An. 849; 9 R. 3.

2. The vendor's warranty of peaceable possession in a deed is a continuing acknowledgment of his vendee's possession and a perpetual interruption of the prescription of thirty years pleaded by the vendor and based upon a hostile entry and adverse possession. R. C. C., Art. 3520.

3. The possession on which this prescription is founded must be continuous, unequivocal and uninterrupted, and must be brought home to the knowledge of the owner in order that the presumption of his acquiescence may be created. R. C. C., Art. 3500; 11 An. 148; Sedgwick & Waite on Trial of Title to Land, 519, *et seq.*

4. A possession which begins as permissive can only be changed into a hostile one as a basis of prescription by notice to the owner of the occupant's intention; such notice constitutes the owner's cause of action and is the starting point of prescription, and the burden of proving such notice is upon him who claims the benefit of the prescription grounded upon it. 82 Mo. 317; 50 Mich. 115; 33 Ohio, 395.

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiff alleges that she is the owner and in possession of ten certain lots of ground situated in the sixth district of the city of New Orleans on the upper side of State street, designated according to the original plan of Bloomingdale drawn by N. B. Buisson on November 12, 1836, as lots Nos. 34 to 43 inclusive, and measuring, according to said plan, 300 feet on the upper side of State street on a depth of 175 feet between parallel lines, the whole bounded by the upper side of State street, Saint Charles (late Dryades) street and the line of Barthez plantation.

That her husband, John Greene, by his last will and testament, duly probated, constituted her as his universal legatee, and that the possession and occupancy of said above described property by her and her author, the said John Greene, has been unequivocal, peaceable and uninterrupted as owner for a period of thirty years.

That there is of record in the office of the register of conveyances for the parish of Orleans an inscription of a sale *purporting to be* a transfer to one Louis F. Bundy by said John Greene of the said property—the said inscription being made in Jefferson parish under date of December 16, 1837.

That said inscription of said *pretended transfer* by said John Greene to Louis F. Bundy operates as a cloud upon her title to said property, and has prevented and continues to prevent her from disposing of the same.

That the heirs of said Bundy lay claim to the title of the property under *said .pretended transfer* by said John Greene, and that they have slandered her title to said property by said pretensions.

That the said heirs by the said inscription of said pretended transfer, their refusal to authorize the erasure of the same, and by their repeated assertions of ownership of said property, thereby preventing the sale of said property by her, have slandered her title and cast a shadow thereon without any legal right so to do.

That she has notified the said above named heirs and the executor of the said L. F. Bundy, in writing, of the invalidity of their pretensions, and has called upon them to present their alleged rights to the court for adjudication, which they declined to do. That the heirs of said Bundy have never had possession of the property in question, nor did the said L. F. Bundy, or *any other person ever* hold a possession adverse to his or her said authors. In view of the premises, she prayed that the heirs and executor be cited and that in due course there be judgment ordering the erasure of their pretended title to said property and for all and general relief.

The heirs and executor, in their answer, " deny all and singular the averments of the petition in any wise tending to disclose a cause of action in said plaintiff against them, and they aver they are the true and lawful owners of the said property by inheritance from their deceased father, Louis F. Bundy, who was the vendee thereof of John Greene, the deceased husband of plaintiff." They pray that there be judgment in their favor, rejecting the demand of the plaintiff and quieting them in their ownership of said property.

Upon the filing of this answer plaintiff came in with a supplemental amended petition, which seems never to have been served or put at issue, in which she prays that in addition to the judgment and relief originally prayed for she be declared to be the owner of the property mentioned and described in her petition.

The trial below resulted in a judgment in favor of the defendant against the plaintiff, and she has appealed.

We find that on the 16th day of December, 1837, by authentic act before Carlile Pollock, notary, John Greene " granted,. bargained

and sold, with all legal warranties, unto Louis F. Bundy, then present, acknowledging possession and accepting the sale," a large quantity of land, of which it is conceded that that which forms the subject of this controversy forms a part, and that the sale was made for the price of $7500, which the vendor " acknowledged to have received " in promissory notes of the vendee, secured by special mortgage.

The pleadings in the case are peculiar. Whilst the plaintiff alleges ownership and possession with the conditions exacted by law for the prescription of thirty years *acquirendi causa* she does not attempt to show the time, place or circumstances of the initial point of the adverse possession which she declares upon.

She brings affirmatively to our notice the existence of an authentic act passed on the 16th day of December, 1837, by which it appears that on that date her author, John Greene, sold the identical property which forms the subject of this litigation to Bundy, the ancestor of the defendants. She also brings to our notice the fact of the registry of that act in the conveyance office in the parish of Jefferson. She avers that the defendants have never had possession of the property mentioned, and that neither their ancestor, Bundy, nor any one else has ever had any possession hostile to that of Greene and herself. She refers to the act of 16th of December, 1837, as an act " purporting to convey the property, and as a pretended " act of sale, and declaring that the inscription of that act works a great injury to her, the only relief which she seeks at our hands is that the inscription of the act, which is an outward and visible sign so far as the public are concerned of the ownership of the property, and which inscription was presumably made at the suggestion of Greene himself, both for his own protection and the benefit of this vendee, should be erased from the public records. We say this is the only relief asked, for whilst the plaintiff prays in a supplemental petition that she be decreed the owner of the property, that petition has never been served on the defendants; as we have said.

The plaintiff designates this action as one of jactitation, but it is not strictly such, and the defendants have been exceedingly careful in their pleadings to avoid admitting it to be such, and exceedingly cautious in seeking to avoid occupying the position of plaintiffs in a petitory action.

The guarded allegation of the answer wherein, departing from the usual general denial, they declare that " they deny all and singular

the allegations of plaintiff's petition tending to disclose an action against them," and the utter absence of any averment at all as to possession disclose defendant's purpose very plainly.

Defendants pray to be adjudged owners of the property, but they are absolutely silent, as we have just said, as to the possession. Neither side has disclosed to us the relations of the parties either before the sale or since, outside of the act of sale itself, and no explanation has been made as to how it has happened that plaintiff should have come to occupy the peculiar if not inconsistent and anomalous position which she does toward Bundy, her own vendee, or how or why the defendants should have allowed such a condition of affairs to occur as to give rise to this very formidable attack against them.

We are uninformed as to the situation of the property at the date of the act of sale—we do not know whether it was then enclosed or unenclosed, whether there was or was not at that time any house upon it, and if there was, whether it was in the actual occupation or use of any one, and if so who that person was.

A careful examination of the pleadings impresses us with the belief that the plaintiff has gone as far toward a direct attack upon the act of the 16th day of December, 1857, and the title therein conveyed, as she thought it safe for her to do.

We can not help thinking that plaintiff in her averments has sought to convey to us, as a key to the situation, the idea that the act of sale was a mere simulation—that both parties being aware of its unreality, and plaintiff's author in possession, he deemed himself safe without a counter letter until attempted sales of the property made manifest to her that such was not the fact, and that it was necessary that this mere apparent title be set aside.

The allegations of the petition are such as would logically lead up to a prayer that the act of 16th December, 1837, be declared a simulation, and that it be adjudged that the original ownership had never be divested, but just at that point the plaintiff suddenly turns aside and predicates her ownership not on the original title, but upon a prescription of thirty years.

If Greene remained in continuous possession of the property after the act of sale, third persons might, under Article 2480 of the Civil Code, require that the parties should produce proof that they were acting in good faith, and establish the reality of the sale, but this rule does not extend to the parties contracting; as be-

tween them the authentic act is full proof of the agreement contained in it, unless it be declared and proved a forgery (C. C. 2236), or in the absence of any allegation of fraud or error by the production of a counter letter or something equivalent. Hennen's Digest, Vol. 1, pp. 534, No. 4.

The character of the evidence required to break the force of such an act as between the contracting parties, is not altered by mere length of time, and long continued possession in the vendor of the property conveyed, does not lead up to the substitution of parol evidence for the written evidence originally required by the law to operate such a result. If any rights could enure to the vendor from that fact they would not arise from the setting aside of the title conrerred by the act and the reinstatement of vendor to her original position, but by the substitution of a new title in the vendor for that which had been acquired by the vendee.

Plaintiff's action can not be maintained from the standpoint of the Greene title, never having passed to Bundy. If it be sustainable at all it must be on the basis of a new title to Green under the operation of the law of the thirty years' prescription.

. The position contended for by plaintiff is stated by her in her application to the district judge for a new trial, as follows:

1. " That the possession of plaintiff has been such as the law requires for the acquisition of title by the prescription of thirty years."

2. " That the vendor of property is not precluded from acquiring title to the property sold by him to his vendee by the prescription of thirty years."

3. " That no obligation of warranty, either expressed or implied, precludes the plaintiff from acquiring the property by prescription of thirty years, under the facts disclosed by the evidence in this case."

4. " That the law in regard to the accountability of the vendor from what results from his personal acts can not legally be extended or interpreted so as to preclude him or his assigns from subsequently acquiring title to the property sold in any of the methods prescribed by law for the acquisition of property, such as by purchase, occupancy, prescription," etc.

Before proceeding to examine into these claims it may be well to take notice of the statement made by plaintiff in her supplemental

brief that we are authorized in this case to presume that Greene re-purchased the property from Bundy, or re-entered upon it under color of title. We do not think we are under the pleadings author-ized to adopt any such presumption, and besides this the theory of an action based on thirty years' prescription is that it rests on no title. Had plaintiff claimed under a title, it would certainly have been pleaded.

Coming to the consideration of the question, as to whether the vendor of property is *absolutely* precluded from acquiring title to the property conveyed by him to her vendee—adversely to that vendee by the prescription of thirty years, we find that the weight of authority, both under the civil and common law, is decidedly in favor of the proposition that he is not estopped from doing so, and that the differences among commentators and courts on this subject have been principally as to the time circumstances and conditions under which such acquisition can be made and claimed, and under and by what evidence it can be proven. The common law decisions will be found in the *American and English Encyclopedia of Law*, under the title of "*Adverse Possession*."

Laurent in his work on "Prescription," 32 Vol. p. 328, Section 314, has gone further in support of the position taken by the plaintiff than any writer we have met. He says: "L'Application des princi-pes que nous venons d'établir soulève une autre difficulté. On pose parfois comme règle que le possesseur ne prescrit point quand il est tenu de l'obligation personnelle de rendre la chose à son véritable maître. C'est une extension du principe formulé par l'Article 2236 et en l'étendant on l'altère. La loi n'admet qu'une seule possession précaire, celle des détenteurs qui possèdent pour autrui, c'est-à-dire ceux qui en vertu de leur titre reconnaissent le droit du pro-priétaire à qui il est tenu de restituer la chose. Tout autre posses-seur n'est pas détenteur précaire, et peut par conséquent prescrire. Je vends un héritage, l'acheteur me paie le prix avant la délivrance, je reste détenteur de l'immeuble et je le possède pendant trente ans, aurai-je prescrit la propriété? L'affirmative nous paraît certaine. Je suis à la vérité obligé de faire la délivrance de la chose à l'ache-teur, mais il ne résulte pas de là que je sois détenteur précaire, car je ne tiens pas en vertu d'un titre qui me donne le droit de détenir la chose en la possédant pour le propriétaire. Je possède au con-traire sans titre, ce qui exclut toute détention précaire—car les dé-

tenteurs précaires ont un titre, et dès que je ne suis pas détenteur précaire, rien ne m'empêche de prescrire, pourvu que ma possession ait les caractères exigés par l'Article 2229." (Citing Mourlon Répétitions, Tome 3, p. 653, Nos. 1844 and 1845, but "En sens contraire," Duranton, Tome 21, p. 384, No. 243.)

Baudry Lacantinerie adopts the same view, but not so unqualifiedly. He speaks of it as a controverted question. See Vol. 3, " Precis du Droit Civil " de la Prescription, No. 1611. Others are of the opinion that it is permissible when the vendor "re-enters upon the property," going to show that they considered it necessary he had first absolutely severed and broken his contractual relations and connection with his vendor.

Laurent, as we have just seen, draws his conclusions from the premise that a *vendor after the sale* does not stand toward the property as a "precarious possessor" of the same.

He defines precarious possessors as " ceux qui possedent en vertu d'un contrat qui leur donne un droit contre le proprietaire." 32 Vol., p. 313, Nos. 299 and 308.

The question as propounded by the plaintiff is a new one in this State, but it does not come squarely before us, for this case is affected by its pleadings, its evidence and its form of action.

We have already alluded to the fact that although this action is claimed by the plaintiff to be an action of jactitation, and based upon a cause of action subsequent to 16th December, 1837, that in the absence of any prayer for ownership of the property referred to, and in presence of the averments that the inscription of the act of 16th December, 1837, is a cloud upon his title, that the act itself " purports to be " and " pretends to be " an act of conveyance, and that no adverse possession has ever been held hostile to her or her author, the suit seems to be rather a direct attack against the verity of the title conveyed by her to Bundy than one asserting the acquisition of a new one.

Again, instead of waiting for the heirs of Bundy to attack her, the plaintiff has taken the initiative and attacked them. One of the difficulties which the defendants would have met had positions been reversed, would have been to avoid a plea of prescription of thirty years leveled by Mrs. Greene against an action against her to deliver the property under the obligation of a vendor in an act of sale.

Mrs. Greene by acting on the offensive has given the defendants the

vantage ground on this question under her pleadings, for, as representative of Greene, a party to the act of sale, the defendants are enabled to urge as against her pretensions put forward in that manner the maxim of *quæ temporalia sunt ad agendum*, and eliminated that particular difficulty from this controversy.

As the plaintiff in this action, Mrs. Greene must establish her claim with certainty.  The general rule on that subject should be vigorously applied where a party who presumptively has received the price of property, attempts to hold the property itself against her vendee and keep both price and property.  But independently of these considerations we hold that under the facts of this case and the pleadings, plaintiff can not successfully change the ownership of this property from her vendee to herself.

We do not agree with the proposition that the moment an act of sale is passed and the property has by effect of the sale been transferred to the purchaser, that the relations between the parties to the act are so broken and disconnected as to make the vendor necessarily stand toward her vendee in relation to the property as a *third person*

Whilst the law-makers, under their constitutional powers, have thought proper to define and regulate the contract of sale, and to fix and determine the effect of that contract, they have at the same time, under a similar power, fixed, determined and regulated the status, relations and obligations of the parties to that contract, as accompanying, flowing and resulting from the same, and those provisions of law are read into the contract and form part of it, just as much as are the accidental, conventional stipulations of the same, subject as the latter are, of course, to be varied by express agreements from the general law.   C. C. 2292, 1964.

The law-maker has declared in Art. 2456 that "the sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser, with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object *has not yet been delivered* nor the price paid," and in Art. 2479 that "the law considers the tradition or delivery of immovables as accompanying the public act which transfers the property.   Every OBSTACLE which the seller afterward *interposes* to prevent the taking of corporal possession by the buyer is considered as a trespass."

There is no doubt that under the provisions of those articles,

where there "exists between two persons an agreement for the object and the price therof," the law takes hold of that agreement and declares, as its immediate and direct effect, the transfer from the vendor to the vendee of not only the ownership of the property, but of all the incidental rights resulting from ownership which the vendor himself had, and which were necessary to make the new ownership effective and operative. 13 La. 237.

The moment there was a *contract* it fulfilled completely and instantly all its functions and obligations merely as such, and as bringing about the legal results affixed by law to it as to ownership, with its accompanying incidental rights, but it by no means follows that because the *contract* thoroughly completed at its very birth these legal results, that the parties to the contract had fulfilled all their obligations under the contract as affixed to it by the law.

Art. 2475 of the Code declares that the seller is bound to two principal obligations—*that of delivery* and that of warranting the thing which he sells.

The obligation of delivering is inherent in and can not be separated from the contract, and the law itself not only makes it the duty of the vendor to deliver, but it charges the vendor with affirmative duties and responsibilities toward his vendee, and in terms declares that until delivery he must act as an administrator of the property. Article 2468 of the Code declares that "until the thing sold is delivered to the buyer the seller is obliged to guard it as a faithful administrator, and if through want of this care the thing is destroyed, or its value diminished, the seller is responsible for the loss."

And this duty is a continuing one, though with decreasing responsibility, for even when the buyer *is in default* the next article declares that the seller is released from this *degree of care* when the buyer delays obtaining the possession, but he is still liable for any injury which the thing sold may sustain through gross neglect on his part.

In view of these express articles of our Code, declaring that until delivery the seller must *take charge of the property as a good administrator*—provisions of law, which, as we have said, must be considered as part of the contract, we are bound to consider that in the interval of time between the sale and the delivery the seller holds the property for the buyer. His "*detention*" is his vendee's "possession" (for it is impossible for two persons to possess the same property at the same time, each for himself), and charged as

he is with a duty to his vendee by law, and in one sense, therefore, by *contract*, he falls squarely under what Laurent even considers the conditions necessary to constitute "precarious possession." There is no evidence in this record to show that Greene ever performed his obligation of delivery. Under the pleadings we are bound to accept as true the very reverse.

Now, assuming that Greene before he had performed that duty could place himself in a position of hostility to his vendee, and could through some positive act of his own, which the French commentators speak of as an "*Acte de Contradiction*," change the character of his possession from that of its origin, and be entitled to alter it by an "interversion of possession," we would certainly require of him for the purpose of acquiring the property by the thirty years' prescription that he should clearly establish that *knowledge* of this change of position had been brought home by him to his vendee. This proof, as we have said, has not been made.

It would be extremely difficult to find the starting point for the operation of the prescription *liberandi causa* of an action to deliver when a continuing affirmative duty to deliver exists contemporaneously with a precarious possession of the property, for as has been said "la détention ne peut être à la fois pour soi et pour autrui—celui qui détient pour autrui perpétue et renouvelle à chaque instant la possession de celui pour lequel il tient, et le temps pendant lequel il peut tenir pour autrui étant indéfini on ne saurait fixer l'époque où celui pour lequel on tient serait dépossédé."

This case is disembarrassed of that question.

We have reached the conclusion that the judgment of the District Court was correct, and for the reasons herein assigned, it is hereby ordered and adjudged that the same be and it is hereby affirmed.