GLADNEY, Judge.
This petitory action was instituted on September 10, 1954, by J. I. Winn, for the purpose of being recognized as the owner and restored to the full and undisputed possession of the NEJ4 of SEJ4 of Section 36, Township 10 North, Range 10 West, in Natchitoches Parish, Louisiana. From an adverse judgment the defendants, Willie Calhoun, the heirs of Matthew Calhoun, and R. B. Williams, have appealed, assigning error to the court a quo in failing to sustain on their behalf a plea of prescription of thirty years acquirendi causa. Other defenses urged in the trial court have been abandoned and are no longer urged.
Plaintiff tendered in support of his title documentary evidence disclosing that the subject property was acquired by D. H. Veal from Willie Calhoun and Matthew Calhoun by deed dated April 28, 1922; that J. I. Winn acquired the property from D. H. Veal by deed dated February 11, 1924; that Willie Calhoun and Matthew Calhoun acquired the property from Levy Calhoun on September 27, 1921, and that said property was severed from the United States-Government and placed in the name of Levy Calhoun through patent dated December 12, 1898. Plaintiff averred that at the time of trial the defendants were in the actual physical possession of said property without title and refused to deliver the property to the plaintiff.
The plea of 30 years prescription alleges actual corporeal possession of the-property in question since September 27, 1921, which was the date of acquisition by Willie Calhoun and Matthew Calhoun from, their father, Levy Calhoun. It is averred that such possession was adverse and consisted of “plowing the land, building and construction of homes, barns and outhouses,, using of the area for the growing of crops, cultivation, pasturing of livestock, cutting' of timber” and in general, all the things, normally showing open and notorious physical possession of the properties.
In order to establish the plea of thirty years prescription, it is essential for the proponents of the plea to show that their possession was of the nature and kind required by the statutory provisions-of the Revised Civil Code. Such ownership of immovables may be prescribed for in thirty years without any deed of title, or possession in good faith. Such possession, however, must be continuous and uninterrupted, public and unequivocal, and under the title of owner. Articles 3499 and 3500 LSA-C.C. Article 3436 states that it is essential to the possession giving rise to the thirty year prescription that there be the intention of possessing as owner, and that such possession be corporeal. LSA-Civil Code Article 3437 provides that occupancy of only a part of the land may be sufficient to support a prescription as to the whole, provided it be with the intention of possessing all that is included within the boundaries; and LSA-Civil Code Article 3438 declares it is permissive that the possession acquired by others may inure *547 "to the benefit of him for whom they received it.
In addition to the testimony relating to acts of physical possession,' defendants tendered evidence to show that taxes on said property for the years 1922 to 1936 were paid in the name of Willie and Matthew Calhoun; that a homestead exemption was obtained by Willie Calhoun; that a tax certificate for the extension and payment of taxes was executed by Willie and Matthew Calhoun for a ten year period commencing with the year 1930; and that said property was sold to the State of Louisiana in 1933 for the 1931 tax extension ■installment and was redeemed in the names ■of Willie and Matthew Calhoun. This evidence is supplementary to the testimony tendered for the purpose of establishing continued physical possession of the property in support of the plea of prescription of thirty years.
In order to properly understand the •origin of this controversy and the relationship which existed between the parties, we give the following narration of events. Prior to 1921 Levy Calhoun owned two adjoining forty-acre tracts of land, including the subject property which he sold in 1921 to his two sons, Willie and Matthew Calhoun. Prior to this time Levy and his two sons had cleared a portion of both forties and having fenced it in, cultivated it. In the Town of Marthaville, Louisiana, near by, D. H. Veal conducted a store out ■of which he furnished supplies to the Calhoun family and had done so for years. On April 28, 1922, Willie Calhoun and Matthew Calhoun executed a notarial act of sale wherein they conveyed the property in dispute with full warranty of title to D. H. Veal for the sum of $200. Levy Calhoun continued to farm a portion of the property for a number of years thereafter. He died in 1944 and Matthew died in 1933. Some time during 1928 or 1929, Willie Calhoun erected a home and other improvements on the subject forty acres and lived on said property until 1945, at which time he dismantled the house and moved into a house which he erected several miles away.
When Willie Calhoun married in 1923, he and his wife did not live on the property, although Willie apparently had some interest in farming with his father on the home place which included some cultivation of acreage on the forty claimed herein. The record, according to his own testimony, was that during 1924 through 1928 his actual farming was away from the property in question and it was only after 1928 that he moved back to the property. The record seems to indicate clearly that during a number of years after 1921 Levy Calhoun did most of the farming on the forty-acre tract as he had prior to the time he sold it to Willie and Matthew Calhoun. Willie testified that Levy Calhoun paid the taxes on the property for several years.
In 1937 the property was assessed to J. I. Winn and subsequent to said date, it has not been assessed otherwise. Since 1945, the fences have been allowed to deteriorate and only vestiges of former occupation and possession appear. The property, with the exception of about twenty acres, is covered mostly with mixed soft and hardwood timber. Willie Calhoun has on several occasions subsequent to 1945 attempted to remove timber and on each of these occasions was reprimanded by Winn for doing so with demand for payment of such timber as was taken by reason of the asserted trespass. Evidence was also adduced that on two occasions in 1945 Willie Calhoun promised to pay Winn for the timbei taken. In 1952 Winn discovered that Willie Calhoun was cutting timber on the property and threatened him with arrest, and did cause him to be arrested for trespass. This case was never brought to trial, but undoubtedly the continued acts of Willie Calhoun in attempting to remove the timber from the property resulted in the institution of this suit. There is no evidence which indicates in any' way that the possession of Levy Calhoun or of his two children, *548 Willie and Matthew, prior to 1928, was hostile to the ownerships of Veal and Winn. Willie Calhoun testified that he first told Mr. Winn of his adverse claim of ownership about the year 1937 when Winn caused the assessment to be changed.
Winn testified he did not know Willie Calhoun claimed ownership of said property until 19S2. At that time Winn had Willie Calhoun arrested for cutting timber on the property. He testified that the occupancy of the Calhoun family of the forty acres was with his permission. He explained that Levy Calhoun and his family had always been good customers at his mercantile establishment; that Levy Calhoun had a large family with his sole income derived from tilling the soil; and that Levy traded with him and paid his debts only from the products of the farm. He further testified that he frequently visited the property and did not know that the property was not assessed to him and that he was not paying the taxes on the property until 1937, when he had the assessment records corrected accordingly, and subsequent to that date the property in dispute has been repeatedly assessed to him and taxes paid by him. The record does not indicate any explanation by Winn as to why he permitted Willie Calhoun to build a home on the property in 1928 and live there continuously until 1945.
In order for the thirty years of possession to elapse prior to its interruption in 1952 when Calhoun was arrested for trespass, it is incumbent on defendants to prescribe against the ownership of Veal. The issue raises the question as to when and under what conditions can a vendor prescribe against his vendee? Apropos to the solution of this issue are the following articles of the LSA-Civil Code.
Art. 3488.
“As to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears that the possession began in the name of and for anothef.
Art. 3489.
“When a person’s possession commenced for another, it is supposed to continue always under the. same title, unless there be proof to the contrary.”
Art. 3490.
“The circumstance of having been in possession by the permission or through the indulgence of another person, gives neither legal possession nor the right of prescribing.
“Thus, those who possess precariously, that is, by having prayed the master to let them have the possession, do not deprive him thereof, but, possessing by his consent, they possess for him.”
Art. 3556.
“25. Precarious. — That possession is called precarious, which one enjoys by the leave of another, and during his pleasure. * * * ”
Art. 3441.
“Those who possess, not for themselves, but in the name of another, as farmers, depositaries and others who acknowledge an owner, can not acquire the legal possession, because at the commencement of their possession, they had not the intention of possession for themselves but for another.”
Art. 3510.
“Those who possess for others and not in their own name, can not prescribe, whatever may be the time of their possession.
“Thus, farmers, tenants, depositaries, usufructuaries and all those generally who hold by a precarious tenure and in the name of the owner, can not prescribe on the thing thus held.”
Art. 3512.
*549 “Notwithstanding what is said in the two preceding articles, precarious possessors and their heirs may prescribe when the cause of their possession is changed by the act of a third person; as if a farmer, for example, acquires from another the estate which he rented. For if he refuse afterwards to pay the rent, if he declare to the lessor that he will no longer hold the estate under him, but that he chooses to enjoy it as his own, this will be a change of possession by an external act, which shall suffice to give a beginning to the prescription.”
Art. 3433.
“One may possess a thing not only by one’s self, but also by other persons.
“Thus the proprietor of a house or other tenement possesses by his tenant, or by his farmer; the minor, by his tutor; and, in general, every proprietor, by the persons who hold the thing in his name.”
Art. 2480.
“In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.”
In Arnold v. Sun Oil Co., 1949, 218 La. 50, 48 So.2d 369, the Supreme Court discussed its opinions in Roe v. Bundy’s Heirs, 1893, 45 La.Ann. 398, 12 So. 759, 763 and Succession of Zebriska, 1907, 119 La. 1076, 44 So. 893, as being the two leading cases in Louisiana which considered'the questions of the nature of possession and the effect thereof on a vendor who remained in possession of the property of his vendee. In the Zebriska case Judge Provosty stated that his viewpoint, though not that of the court, was that the decided weight of civil law authority is that the unexplained continued possession of the vendor is presumed to be for himself and, he added, that under our Code such a thing as a notarial sale of immovable property without delivery is an impossibility. After examining thoroughly the civil commentaries pregnant to the issue, the court in Arnold v. Sun Oil Co. had this to say [218 La. 50, 48 So.2d 387]:
“The individual view expressed by Justice Provosty was, of course, as stated by him, not the opinion of the court, and our review of the writings of the French commentators convinces us that the opinion of the majority of these commentators does not support his view. We hold to the view that, when the continued possession of the vendor is unexplained, as to third persons there is a presumption of simulation, [LSA] Civil Code, Article 2480, and as between the parties the unexplained continued possession of the vendor is presumed to be for the benefit of the vendee. [LSA] Civil Code, Articles 3433 and 3489. But, where a vendor is not in actual possession at the time of the sale, or where he is in possession at that time, and surrenders possession to his ven-dee, and where, in either of such cases, the vendor later takes or re-takes, as the case may be, possession of the thing sold, the unexplained possession of the vendor thereafter, in either case, is presumed to be for himself, as owner, and not for the benefit of his vendee. However, all of these presumptions may be rebutted. [LSA] Civil Code, Articles 2480, 3512, and 3488. In both Roe v. Bundy and Succession of Zebriska, both cited supra, it is conceded that a vendor may possess adversely to his vendee and reacquire the property he has sold by the prescription of 30 years. In Roe v. Bundy, supra, we said:
“ ‘Coming to the consideration of the question as to whether the vendor of *550 property is absolutely precluded from acquiring title to the property conveyed by him to his vendee, adversely to that vendee, by the prescription of 30 years, we find that the weight of authority, both under the civil and common law, is decidedly in favor of the proposition that he is not estopped from doing so, and that the differences among commentators and courts on this subject have been principally as to the time, circumstances, and conditions under which such acquisition can be made and claimed, and under and by what evidence it can be proven. The common-law decisions will be found in the American and English Encyclopedia of Law under the title of “Adverse Possession.”
♦ ‡**********
“ ‘Now, assuming that Greene, before he had performed that duty, could place himself in a position of hostility to his vendee (vendor), and could through some positive act of his own, which the French commentators speak of as an “acte de contradiction,” change the character of his possession from that of its origin, and be entitled to alter it by an “interversión of possession,” we would certainly require of him for the purpose of acquiring the property by the 30-years prescription, that he should clearly establish that knowledge of this change of position had been brought home by him to his vendee. This proof, as we have said, has not been made.’ ”
The foregoing decision imposes upon a vendor, who remains in possession of the property which he has sold, and who, therefore, is a precarious possessor, the duty to make known to the vendee his adverse claim of ownership. Thus, in John T. Moore Planting Co. v. Morgan’s Louisiana & T. R. & S. S. Co., 1910, 126 La. 840, 53 So. 22, 35, the court said:
“Such excerpts as these — all in the same sense — could be multiplied almost indefinitely. From them it is very plain that for a precarious possessor, such as a usufructuary or the holder of a servitude, to change the cause of his possession and inaugurate a new possession, it does not suffice for him to acquire and record a new title; but that he must, in addition, indicate by some outward acts of possession his intention to hold no longer under the old title but under the new; and that these acts must be of an unusually pronounced character. He must so conduct himself as to let the owner know that a new order of things has begun. In the same way that prescription liberandi causa is founded upon a presumption of payment, prescription acquirendi causa is founded upon a presumption of acquiescence on the part of the owner in the claim of title set up by the possessor; and the owner of property cannot be presumed to have acquiesced in a claim of ownership of which he is in total ignorance. He cannot be presumed to have known that the possession which theretofore had been precarious has suddenly become animo domini, when there has been absolutely nothing in the manner of the possession to indicate the change. The registry of the new title is not notice to him. It is as to him res inter alios acta. He has no concern with it. A man who is in the quiet and peaceable possession and enjoyment of his property does not have to be inspecting the public records every day, or every month or every year, or, for the matter of that every 10 or 30 years, to find out if somebody has not been recording title to his property. Until his possession is disturbed he does not have to concern himself with any claims that other people may be recording against his property. Registry is for the benefit of those who wish to contract with reference to property — to inform them of the condition of the title to the *551 property with reference to which they are about to contract, and was never designed to operate as a means of disturbing or ousting the possession of the owner of the property * * *
Willie Calhoun testified he first informed Winn of his intention to possess adversely and as owner in 1937, and the evidence, in our opinion, does not establish that prior to 1928 the character of Calhoun’s possession changed from that of occupancy by permission to that of an adverse owner. The above date is selected as being the year when Willie Calhoun began the construction of his home which he lived in until 1945. No satisfactory explanation was made by Winn as to why he permitted Willie Calhoun to build his home on the disputed property. From this fact it may be presumed such possession was so adverse to the right of the true owner that he will be put on constructive notice that a non-owner is claiming his land. But even if this be conceded, arguendo, the proponents of the plea of prescription have not shown the requisite thirty years of possession, and therefore, the plea of prescription was properly rejected.
By way of defense it was urged that the deed from Willie and Matthew Calhoun to D. H. Veal was intended as a mortgage and not as a deed. The pleadings failed to disclose any specific allegations of fraud and upon objection duly made the defendants were not permitted to offer parol testimony to show that the property was mortgaged rather than sold by Willie and Matthew Calhoun. The ruling was correct. Art. 2276, LSA-C.C. As pointed out heretofore, the defense, as presented, is predicated solely upon the thirty year prescription acquirendi causa.
Prior to the rendition of judgment from which this appeal was taken, J. I. Winn died and his heirs were recognized and placed in possession of his estate, and subsequently were appropriately substituted as parties plaintiff herein.
It follows from our findings that the judgment from which appealed should be affirmed. It is therefore ordered, adjudged and decreed that there be judgment herein in favor of the plaintiffs, A. E. Winn. T.W. Winn, and Mrs. Alma Winn Sibley, and against the defendants, Willie Calhoun, Johnny Calhoun, Olsie Calhoun, Elsie Calhoun, Ola V. Calhoun Wilson, Reval Calhoun Jackson and Richard B. Williams, decreeing said plaintiffs to be the true and lawful owners of the following described property, to-wit: NE14 of SEJ4 in Section 36, Township 10 North, Range 10 West, Natchitoches Parish, Louisiana.
It is further ordered, adjudged and decreed that defendants deliver possession of said property to plaintiffs and that they pay all cost of this suit.