467 So.2d 1202 (1985)
JAMES HARVEY RAMSEY ESTATE, INC., Plaintiff-Appellee,
v.
James A. PACE and Southwestern Electric Power Company, Defendant-Appellant.
No. 16,823-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1985.
Rehearing Denied May 3, 1985.
Writ Denied June 28, 1985.
*1204 Gamble & Sledge by Jack R. Gamble, Jr. and Claude R. Sledge, Mansfield, for defendant-appellant, James A. Pace.
Nelson, Hammons & Johnson by Sydney B. Nelson, Shreveport, for plaintiff-appellee James Harvey Ramsey Estate.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
*1205 NORRIS, Judge.
In this possessory action defendant Pace appeals a judgment that recognized Ramsey's right of possession of five acres of timberland and that ordered Pace to assert his claim of ownership in a petitory action within 45 days or be thereafter precluded from asserting ownership. CCP Arts. 3660, 3662.
Pace contends that Ramsey did not prove sufficient adverse possession to support the judgment and that he should not have been cast with the cost of a survey hired by Ramsey.
We also notice that Ramsey, whose ancestor warranted peaceful possession in 1937 to Pace's ancestor of a 10-acre tract that included the five acres here in question, does not have a right of action against Pace under the circumstances of this record. CCP Art. 927. Accordingly, we reverse and render judgment to this effect. See generally 44 La.L.R. 69 (1983); 58 Tul. L.R. 573 (1958).

FACTS
In 1929 J.O. Pace acquired from M.P. Ramsey by warranty deed 410 acres in DeSoto Parish which included a rectangular tract which was the northernmost 10 acres of the NE/4 of NE/4 of Sec. 33, T13N, R16W.
In 1937 the description of this 10-acre rectangular tract was changed to a 10-acre square tract by a correction deed, also "with full warranty of title", that was executed by J.O. Pace and M.P. Ramsey. The 10-acre square tract was described in the 1937 correction deed as the
NE/4 NE/4 NE/4 of Section 33 ...
Defendant Pace is the son of J.O. Pace. He acquired the 10-acre square tract in 1959 in a partition with other Pace heirs. The plaintiff Ramsey corporation was created in 1980 by the heirs of M.P. Ramsey who exchanged their inherited interest in the Ramsey lands for corporate stock. M.P. Ramsey's heirs and their corporation (hereafter Ramsey) are bound by the warranty obligation originally owed by M.P. Ramsey to maintain Pace in peaceful possession. Keller v. Haas, 202 La. 486, 12 So.2d 238 (1943); Cattle Farms, Inc. v. Abercrombie, 211 So.2d 354 (La.App. 4th Cir.1968); Boyet v. Perryman, 240 La. 339, 123 So.2d 79 (1960).[1]
This drawing illustrates the area and the square 10-acre tract in Section 33 and some of the indicia of possession exercised by Pace and by Ramsey since the 1937 correction deed:
*1206 
The 10 acres were assessed to Pace in 1937 and were removed from Ramsey's assessment in 1948. The record also reveals that Pace has paid taxes as they came due. Chronologically, these facts are also revealed in the record:
In 1958, after hiring a surveyor who the trial court found did not look behind Pace's 1929 deed from Ramsey of 410 acres, Pace erected the Pace fence depicted on the above drawing.
In 1967, Ramsey hired a forester who painted a blue line parallel to the fence across the 40 acres. This line was repainted in 1973 and in 1979 and is also shown on the drawing. Ramsey selectively cut timber on its entire surrounding acreage including the disputed 5-acre tract. It was estimated that actual time spent in cutting timber on the disputed tract was one day in each of the years 1967, 1973 and 1979.
In 1976, Pace executed a mineral lease on the 410 acres to Marshall Exploration, Inc. This acreage expressly included the 10-acre square. Almost simultaneously in 1976, Ramsey leased his 869 acres to the same lessee. This acreage expressly excluded the 10-acre square in Sec. 33.
Marshall Exploration thereafter erected the tanks and compressor station depicted on the above drawing. Marshall Exploration also began to gravel and maintain the gravel road shown on the drawing which originally was a dirt trail or road apparently used in Ramsey's logging endeavors that *1207 began in 1967.[2] The pipeline shown on the drawing is Marshall's pipeline which services wells that are located on Ramsey's property.[3]
In 1979, Pace executed a powerline right-of-way to Southwestern Electric Power Company which provoked the filing of this action when SWEPCO thereafter began to clear the right-of-way. SWEPCO was originally joined as a defendant but was eventually dismissed from the action by agreement.
Ramsey, unable to produce a written agreement, testified that he verbally contracted to permit Marshall to erect the tanks and compressor station on the five acres in question. See footnote 3. Ramsey also testified that he periodically traversed and inspected the five acres along with his other acreage to the west and south and traveled the gravel road. After this action was instituted Ramsey also erected two "no trespassing" signs on the five acres.
Pace testified he knew nothing of Ramsey's cutting of the timber until Ramsey sued. In his petition Ramsey alleged possession as owner of the NE/4 NE/4 of Section 33 "less and except" the rectangularly described 10-acre tract. The description of the excepted 10 acres in Ramsey's allegation is identical with the description of the rectangular tract in the 1929 deed that was corrected in 1937. The timber sales by Ramsey in 1967, 1973 and 1979 were not recorded. Pace acknowledged that his actions with respect to the five acres was limited to paying taxes [since 1937], leasing the 410 acres to Marshall [in 1976], and granting the right-of-way to SWEPCO [in 1979]. The activities of Pace's mineral lessee, Marshall, on the five acres in question [erection and maintenance of tanks, compressor station, pipeline, road] must also be emphasized at this juncture as acts of corporeal possession that inure to Pace on the five acres. Allison v. Maroun, 193 La. 286, 190 So. 408 (1939); Lawton v. Anthony, 92 So.2d 747 (La.App. 2d Cir.1957).

PACE'S POSSESSION
The possession of a transferor inures to the transferee if there has been no interruption of possession. CC Arts. 3437-3438. Ramsey testified that his family had exercised possession of the disputed tract in substantially the same manner since 1929. Pace corporeally possessed the 10 acre square when he erected the fence across it in 1958. Pace has not abandoned possession of the south five acres of the square even after erecting the fence because the record indicates he exercised his ownership thereafter. CC 3418. He executed the mineral lease to Marshall in 1976. He executed the right-of-way to SWEPCO in 1979. He paid taxes on the 410 acres deeded him by Ramsey, including the 10 acre square, since 1937.
The exercise of corporeal possession by Pace's mineral lessee, Marshall Exploration, over the five acres in question inures to Pace, notwithstanding Ramsey's testimony that he gave verbal permission to Marshall to so operate. Marshall's exercise of this corporeal possession can better be attributed to its mineral lease from Pace because Ramsey's lease to Marshall excluded the 10 acres. If this record indicated with clarity exactly when Marshall's *1208 activities [erection of storage tanks and compressor station] began on the disputed tract, we might well dispose of the case on that information alone, since Pace, through his mineral lessee, would have routinely exercised corporeal possession. CC Arts. 3424-3425; CCP Art. 3658. However, we admit the record is unclear on this point and it is possible that these activities were begun after the filing of this action in 1980. Pace also constructively possessed to the limits of the title conveyed him by Ramsey.
The intent to retain possession is presumed unless there is clear proof of a contrary intention. CC Art. 3432. One who proves he had possession at different times is presumed to have possessed during the intermediate period. CC Art. 3443. The right to possess is lost either upon abandonment (which has not occurred here) or upon the possessor being evicted from the property for more than a year. CC Art. 3434. Pace has not lost his right to possess the five acres in question.

RAMSEY'S POSSESSION
The exercise of possession on behalf of another is precarious possession. CC Art. 3437. A precarious possessor is presumed to possess for another even though he intends to possess for himself. CC Art. 3438. The retention of possession by the vendor makes him the presumed precarious possessor for his vendee. Frost Lumber Industries v. Harrison, 215 La. 767, 41 So.2d 674 (1949).
It is, of course, ordinarily true that one in possession of property is presumed to hold as owner. But this presumption does not obtain where it appears that the possessor has sold the property and has remained in possession by the sufferance of his vendee....
And while it is also well recognized in our jurisprudence that there is no legal obstacle which prevents a vendor from re-acquiring a prescriptive title to the property he has sold, Roe v. Bundy's Heirs [45 La.Ann. 398, 12 So. 759 (1893)] and Succession of Zebriska [119 La. 1076, 44 So. 893 (1907)], supra (relied on by the Court of Appeal), are cogent authority for the proposition that such a vendor, who has continued in possession following the sale, must establish as a fact that he possessed as ownerfor, in the absence of any evidence other than his retention of physical possession, he will be regarded as a precarious possessor for his vendee. 41 So.2d at p. 675, 676, citations omitted.
Possession that is either clandestine, discontinuous, or equivocal has no legal effect. CC Art. 3435.
Possession is clandestine when it is not open or public, discontinuous when it is not exercised at regular intervals, and equivocal when there is ambiguity as to the intent of the possessor to own the thing. CC Art. 3436, in part.
A vendor who remains in possession of some of the lands he has sold is in the nature of a precarious possessor. CC Art. 3437. Roe v. Bundy's Heirs, 45 La. Ann. 398, 12 So. 759, 763 (1893). A vendor in such a situation, however, is not precluded
from acquiring a title by adverse possession... if the intention to hold adversely is manifested by some unequivocal act of hostility, brought to the knowledge of the vendee, [and] the [acquisitive prescription] will begin to run. Succession of Zebriska, 119 La. 1076, 44 So. 893, 897 (1907), emphasis supplied.
Those "who acknowledge an owner" cannot acquire legal possession. Former CC Art. 3441. Such possession is precarious. CC Art. 3437. Ramsey's heirs, and their corporation, being bound by the 1929-1937 warranty deeds, legally acknowledge Pace as owner. Heirs of a vendor-warrantor of peaceful possession to a vendee, accepting the succession, are not in the situation of third-party usurpers or bad faith possessors adverse to their ancestor's vendee. See Boyet, cited supra, and footnote one. See also former CC Art. 3444 to the effect that the presumption to retain possession, once begun, continues in the absence of a revocation unless a third person has usurped the possession or taken *1209 the possession from the original vendee-possessor.
The possessory action is a creature of the Civil Code. See former CC Arts. 3454-56 and Official Revision Comments (a) to CCP Art. 3660.
(a) This article makes no change in the law, but is a restatement of its indirect sources and is declaratory of the established jurisprudence on the subject.
A warrantor-vendor of peaceful possession under CC Arts. 2476, 2485, 2504-06, 2514, for purposes of the possessory action, cannot be the usurper of the vendee-warrantee's peaceful possession under the circumstances of this record because he is in the nature of a precarious possessor and does not begin to possess for himself until he brings to the knowledge of his vendee some unequivocal act of hostility [Zebriska, supra] or actual notice [CC Art. 3439].[4] Admittedly, Ramsey has not given actual notice of its intention to change the character of its possession to Pace.
Once a person enters into a relationship with another that places him in the category of precarious possessor, the Code presumes that such condition continues throughout the duration of his detention of the thing. The policy behind this presumption (and, indeed, behind the entirety of Chapter 2, Title XXIII, Book III dealing with possession) is that the owner or possessor must be given an adequate opportunity to ascertain the fact that another party is adversely possessing his property so that he may institute a possessory action. To allow a precarious possessor to change his mind covertly and begin to possess in his own name clearly would circumvent this policy. As with all of the presumptions imposed by the Code articles dealing with possession, the presumption of precariousness imposed by this article is rebuttable.

The converse of the prohibition against a covert conversion from precarious to adverse possession would be a rule that an outwardly manifested change in intention should allow a mere detainer to become a true possessor. This is indeed the policy of the Code. Revised article 3439 provides that a co-owner can change his relationship as precarious possessor vis-a-vis his other co-owners through overt and unambiguous acts which are sufficient to give notice to his co-owners that he intends to possess for himself. Precarious possessors other than co-owners, however, must give actual notice of such intent to the person on whose behalf they are possessing. 58 Tul.L.Rev. 587-588, (1983) footnotes omitted. Emphasis added.
The 1982 Civil Code revisions make no change in the law. The occasional cutting of timber in isolated woodland or swamp is not such a continuous possession that will ripen into a title adverse to the true owner. See St. Paul v. Louisiana Cypress Lumber Co., 116 La. 585, 40 So. 906 (1906); compare Frost Lumber Industries, cited supra. CC Art. 3435. See 58 Tul.L.Rev. 583 (1983) Jacobs v. Southern Advance Bag & Paper Company, 228 La. 462, 82 So.2d 765 (1955); Fontenot v. Marks, 430 So.2d 810 (La.App. 3d Cir.1983); Crain v. Graves, 177 So.2d 189 (La.App. 3d Cir.1965), writ refused; Nixon v. English, 207 La. 906, 22 So.2d 266 (1945).

CONCLUSIONS
Possession signifies factual or corporeal authority over property with intent to possess. The right to possess is an incorporeal thing distinct from possession and from ownerhip. CC Arts. 3422, 3440. Compare Arts. 477-482. See 58 Tul.L.Rev. 573 (1983), 44 La.L.R. 69 (1983).
It has long been recognized that the attributes of possession for the purposes of 30-year acquisitive prescription *1210 are the same as those necessary for a possessory action. 58 Tul.L.Rev. 586, citing Norton v. Addie, 337 So.2d 432 (La. 1976), 44 La.L.R. 69, (1983). That possession must be open or public, exercised at regular intervals, and unequivocal. An otherwise valid factual possession may be rendered legally ineffective by the vice of being either clandestine, discontinuous, or equivocal. CC Arts. 3436, 3476-3477.
Even though a precarious possessor may intend to possess for himself, he is presumed to possess for another. CC Art. 3438. A precarious possessor, nonetheless, may resort to the possessory action against anyone who disturbs his possession except the person for whom he possesses. CC Art. 3440.
Thus one who has possessed for over a year has acquired the right to possess that may be protected by the possessory action unless he is a precarious possessor seeking enforcement of that right against another for whom he possesses. One reason for the exception is that the possession of the precarious possessor inures to the benefit of the other and the other has a viable right to exercise the actual possession of which the precarious possessor complains. Another reason is that the precarious possessor, who warrants, as a vendor, the right of peaceful possession to his vendee, should not be able to complain that the vendee's exercise of that right disturbs the vendor's possession.
When the warrantor-vendor of property, by the requisite notice to his vendee, converts his possession to adverse possession, acquisitive prescription begins to run. Before that notice, acquisitive prescription does not run in favor of the vendor-precarious possessor. CC Art. 3477. See law reviews cited supra.
When the quality of the respective possession of Ramsey and Pace is compared in the light of the other's possession, Ramsey's acts of possession have been relatively equivocal, clandestine, and discontinuous. CC Art. 3435. Even should we agree, arguendo, that Ramsey's "possession" was continuous and not interrupted, and was otherwise legally effective, he has not brought to Pace's knowledge any unequivocal act of hostility (Succn. of Zebriska) or actual notice (Art. 3439) of his intent to possess adversely to Pace until this action was instituted.
The law is invoked by an adverse possessor after 30 years to prove ownership by acquisitive prescription. In such a case the adverse possessor, whether or not a vendor, who otherwise meets the legal qualifications, is not disputing the record title or owner ship of his vendee but is asserting only that he has acquired ownership by 30 years possession. Succn. of Zebriska, supra.
Under the circumstance of this record the law should not, however, be invoked to aid a vendor to dispossess his vendee of the peaceful possession he has warranted and preclude that vendee from continuing to exercise the constructive and corporeal possession that he has enjoyed.
We need not and do not find that Pace's 1937 deed is not subject to attack by Ramsey in another action. We need not and do not find what may constitute the actual notice required by the Civil Code for the purpose of 30 years acquisitive prescription. These issues concern title or ownership. We are concerned only in this action with possession and Ramsey's capacity, under these facts, to invoke the possessory action created by the Civil Code and codified in the Code of Civil Procedure. For the reasons explained, we must find that the trial court erred in its application of the law.

DECREE
The judgment appealed is reversed. Judgment is hereby rendered that Ramsey's possession is of no legal effect and that Ramsey has no right of action against Pace under the circumstances of this record. Accordingly, it is ordered that Ramsey's possessory action demands are *1211 hereby dismissed with prejudice at Ramsey's cost.
REVERSED AND RENDERED.
NOTES
[1] Shelly Boyet and his brothers and sisters, having unconditionally accepted the succession of their father Noel H. Boyet, vendor of the property here in dispute, were bound by his warranty. The obligation of warranty descends to the heirs of the vendor, and one of its objects is the buyer's peaceful possession of the thing sold; and heirs accepting the vendor's succession are not in the situation of third parties. 123 So.2d at p. 86, citations omitted.
[2] Marshall Exploration bought the N/2 of the 10-acre square from Pace in 1978 and erected the fence shown on the drawing as the Marshall fence.
[3] Ramsey introduced a copy of an unsigned damage release that he says he executed to Marshall on September 29, 1980. This release asserts that Ramsey claimed damages from Marshall for its drilling and operation of four wells in section 33, being on

S/2 of NW/4
N/2 of SW/4
S/2 of SE/4 and
N/2 of NW/4.
None of the wells are on the NE/4 of Sec. 33. Ramsey's lease to Marshall in 1976 excluded the 10-acre square in the NE/4 of NE/4 of Sec. 33. Pace's lease included the square. Pace, and not Ramsey, is being paid production royalty on the 10-acre square. Ramsey is being paid production royalty on the remainder of the NE/4 of NE/4.
[4] "A co-owner, or his universal successor, commences to possess for himself when he demonstrates this intent by overt and unambiguous acts sufficient to give notice to his co-owner. "Any other precarious possessor, or his universal successor, commences to possess for himself when he gives actual notice of this intent to the person on whose behalf he is possessing."